# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIESTER, et al, | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 25-04502-JMY |
| THE SCHOOL DISTRICT OF | : |
| PHILADELPHIA, et al | : |
| | : |
| Defendants. | : |
| | : |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants the School District of Philadelphia ("School District"), Richard Gordon IV ("Gordon"), Kiana Thompson ("Thompson"), and Rashida Stamps ("Stamps") (hereinafter, collectively the "Defendants") file this Motion to Dismiss the Amended Complaint, respectfully requesting that this Court grant their Motion and enter an Order substantially in the form enclosed herewith. Defendants incorporate by reference the arguments and legal authorities set forth in the accompanying Memorandum of Law as if fully set forth herein.

Date: February 10, 2026

*/s/ Marjorie McMahon Obod*
Marjorie McMahon Obod
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, Pennsylvania 19103

*Attorney for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HIESTER, et al, | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 25-04502-JMY |
| THE SCHOOL DISTRICT OF | : |
| PHILADELPHIA, et al | : |
| | : |
| Defendants. | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS THE SCHOOL DISTRICT OF PHILADELPHIA,
RICHARD GORDON IV, KIANA THOMPSON, AND RASHIDA STAMPS'
<u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

<u>*/s/ Marjorie McMahon Obod*</u>
Marjorie McMahon Obod
I.D. No. 47531
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, Pennsylvania 19103

*Attorney for Defendants*

#125450736v1

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ................................................................ 1

II.   PLAINTIFFS' ALLEGATIONS .............................................................. 4

III.  LEGAL STANDARD ........................................................................... 9

IV.   LEGAL ARGUMENT ......................................................................... 10

   A.  Count I of Plaintiffs' Complaint Should be Dismissed for Lack of Standing
       and As a Matter of Law .................................................................. 10

       1.   Plaintiffs' Claims Under the Establishment and Free Exercise Clauses
            Should Be Dismissed for Lack of Standing, Mootness, and Failure to Plead
            Cognizable Damages .................................................................. 10
       2.   Plaintiffs' Averments Show No Establishment Clause Violation Exists ........ 15
       3.   Count I's Free Exercise Clause Claim Fails Because There Was No
            Substantial Burden on Religious Practice .......................................... 20

   B.  Count II Must be Dismissed Because Plaintiffs Fail to Plead Facts Sufficient
       to Establish Defendants Violated Plaintiffs' Liberty Interest in Reputation ............. 21

   C.  Count III Fails as a Matter of Law ...................................................... 24

       1.   Plaintiffs Impermissibly Attempt to Expand Title VI of the Civil Rights Act
            Beyond Its Statutory Boundaries ................................................... 24
       2.   Count III Does Not Plausibly Allege a Protected-Class Nexus or Associational
            Grievances ........................................................................... 25
       3.   Plaintiffs' Disagreement with School Discipline Cannot Salvage Their Title
            VI Claim .............................................................................. 27

   D.  Count IV Claim for Failure to Provide Procedural Due Process Fails as
       Plaintiffs Themselves Describe Notice Provided ........................................ 30

   E.  Plaintiffs' Allegations of Policy Harms in Count I Fail to State a Monell
       Claim ..................................................................................... 31

   F.  Defendants Gordon, Stamps, and Thompson are Entitled to Qualified
       Immunity in Counts I, II, and IV ........................................................ 33

   G.  Count III Fails Against Defendants Gordon and Thompson Because Title VI
       Provides No Individual Liability, Official Capacity Claims Are Redundant,
       and No Clearly Established Law Shows a Violation ...................................... 38

**H.  Plaintiffs Cannot Seek Punitive Damages Against the School District and Have Not Pled Facts Necessary For Punitive Damages From Individual Defendants** ................................................................................................ **39**

**V.  CONCLUSION** ................................................................................................ **41**

#125450736v1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
   29 F.3d 855 (3d Cir. 1994)................................................................22

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)................................................................24

*Altman v. Bedford Cent. Sch. Dist.*,
   245 F.3d 49 (2d Cir. 2001)................................................................13, 15

*Am. Legion v. Am. Humanist Ass'n*,
   588 U.S. 29 (2019) (Gorsuch, J., concurring)................................................16, 18

*Anderson v. Creighton*,
   483 U.S. 635 (1987)................................................................36

*Andrews v. City of Phila.*,
   895 F.2d 1469 (3d Cir. 1990)................................................................32

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997)................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................9

*Barnes v. Gorman*,
   536 U.S. 181 (2002)................................................................40

*Bd. of Cnty. Comm'rs of Bryan Cnty. V. Brown*,
   520 U.S. 397 (1997)................................................................33

*Bd. of Educ. of Westside Cmty. Schs. v. Mergens*,
   496 U.S. 226 (1990)................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................9

*Bennett v. Saint-Gobain Corp.*,
   507 F.3d 23 (1st Cir. 2007)................................................................30

*Bethel Sch. Dist. No. 403 v. Fraser*,
   478 U.S. 675 (1986)................................................................31, 37

*Bhombal v. Irving Indep. Sch. Dist.*,
   809 F. App'x 233 (5th Cir. 2020)................................................................25, 27, 28

*Blunt v. Lower Merion Sch. Dist.*,
    767 F.3d 247 (3d Cir. 2014)................................................................................27

*In re Burlington Coat Factory Securities Litigation*,
    114 F3d. 1410 (3d Cir. 1997)..............................................................................22

*California Parents for Equalization of Educ. Materials v. Torlakson*,
    973 F.3d 1010 (9th Cir. 2020) .............................................................................20

*Canaan v. Carnegie Mellon Univ.*,
    760 F. Supp. 3d 306 (W.D. Pa. 2024)..................................................................25

*Carey v. Piphus*,
    435 U.S. 247 (1978)..............................................................................................12

*Carroll v. Richardson*,
    CV No. 16-1406, 2021 WL 3209715 (E.D. Pa. July 29, 2021)............................37

*Chandler v. Siegelman*,
    230 F.3d 1313 (11th Cir. 2000) .....................................................................17, 35

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)........................................................................................20, 36

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)........................................................................................11, 12

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)..............................................................................................40

*Clark v. Twp of Falls*,
    F.2d 611, 619 (3d Cir. 1989)...............................................................................22

*Cole v. Oroville Union High Sch. Dist.*,
    228 F.3d 1092 (9th Cir. 2000) .............................................................................13

*Connick v. Thompson*,
    563 U.S. 51 (2011)................................................................................................32

*Cornelius-Millan v. Caribbean Univ., Inc.*,
    261 F. Supp. 3d 143 (D.P.R. 2016)................................................................27, 28

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)...................................................................................2, 28, 30

*Doe v. Bowling Green State Univ.*,
    No. 3:22-CV-140, 2022 WL 4599247 (N.D. Ohio Sept. 30, 2022).......................39

iv

*Doe v. Madison Sch. Dist. No. 321,*
    177 F.3d 789 (9th Cir. 1999) (*en banc*) ............................................................13

*Donovan v. Pittston Area Sch. Dist.,*
    Civ. No. 3:14-1657, 2015 WL 3771420 (M.D. Pa. June 17, 2015)........................39

*Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.,*
    336 F.3d 211 (3d Cir. 2003)............................................................................13, 15

*Emp. Div. v. Smith,*
    494 U.S. 872 (1990)...........................................................................................20

*Engel v. Vitale,*
    370 U.S. 421 (1962)...........................................................................................17

*Fisk v. Bd. of Trs. of California State Univ.,*
    No. 22-CV-173, 2023 WL 6051381 (S.D. Cal. Sept. 15, 2023)............................14

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)..................................................................................9

*Freedom from Religion Foundation, Inc., v. New Kensington Arnold Sch. Dist.,*
    832 F.3d 469 (3d Cir. 2016)............................................................12, 13, 14, 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)...........................................................................................11

*Gabrielle M. v. Park Forest–Chicago Heights Sch. Dist. 163,*
    315 F.3d 817 (7th Cir. 2003) ...............................................................................29

*Gazarov ex rel Gazarov v. Diocese of Erie,*
    80 F. App'x 202 (3d Cir. 2003) ............................................................................30

*Gebser v. Lago Vista Indep. Sch. Dist.,*
    524 U.S. 274 (1998).....................................................................................25, 27

*Goss v. Lopez,*
    419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)...............................30, 37, 38

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)...........................................................................................34

*Hill v. Borough of Kutztown,*
    455 F.3d 225 (3d Cir. 2006)................................................................................22

*Hoing v. Doe,*
    484 U.S. 305 (1988)...........................................................................................14

v

*Judge v. Shikellamy Sch. Dist.*,
    135 F.Supp.3d 284 (M.D. Pa. 2015), *aff'd*, 905 F.3d 122 (3d Cir. 2018) ..............................40

*K.Y. through Yu v. Schmitt*,
    799 F. App'x 485 (9th Cir. 2020) ..........................................................................................13

*Ke v. Drexel Univ.*,
    Civ. No. 11-6708, 2015 WL 5316492 (E.D. Pa. Sept. 4, 2015) ...............................................29

*Kelly v. Borough of Carlisle*,
    622 F.3d 248 (3d Cir. 2010)....................................................................................................36

*Kengerski v. Harper*,
    6. F. 4th 531, 538 (3d Cir. 2021) ...........................................................................................26

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022)........................................................................................................ *passim*

*Koger v. Allegheny Cty. Intermediate Unit*,
    C.A. No. 10-1466, 2011 U.S. Dist. LEXIS 45330 (W.D. Pa. Apr. 27, 2011) ........................22

*L.R. v. Sch. Dist. of Philadelphia*,
    836 F.3d 235 (3d Cir. 2016)...........................................................................................34, 38

*Lee v. Weisman*,
    505 U.S. 577 (1992)................................................................................................................17

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971)........................................................................................16, 17, 34, 35

*M.S. v. Susquehanna Twp. Sch. Dist.*,
    No. 1:13-cv-02718, 2017 WL 6397827 (M.D. Pa. Dec. 15, 2017) *aff'd*, 969
    F.3d 120 (3d Cir. 2020)..........................................................................................................29

*Malley v. Briggs*,
    475 U.S. 335 (1986)................................................................................................................34

*Mark v. Borough of Hatboro*,
    51 F.3d 1137 (3d Cir. 1995)...................................................................................................32

*McTernan v. City of York*,
    564 F.3d 636 (3d Cir. 2009)...................................................................................................32

*Memphis Cmty. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986)................................................................................................................12

*Meyer v. Austin Independent Sch. Dist.*,
    161 F.3d 271 (5th Cir. 1998) ...........................................................................................31, 38

vi

*Miller v. Clinton Cnty.*,
   544 F.3d 542 (3d Cir. 2008) ......................................................................38

*Monell v. New York City Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ..........................................................................4, 32, 33

*Nicole K. By and Through Peter K. v. Upper Perkiomen Sch. Dist.*,
   964 F. Supp. 931 (E.D. Pa. 1997) ............................................................23

*Hilsenrath of C.H. v. Sch. Dist. of the Chathams*,
   136 F.4th 484 ............................................................................................18

*Palmer by Palmer v. Merluzzi*,
   868 F.2d 90 (3d Cir. 1989) ........................................................................37

*Parr v. Woodmen of World Life Ins. Co.*,
   791 F. 2d 888 (11th Cir. 1986) ..................................................................26

*Paul v. Davis*,
   424 U.S. 693 (1976) ..................................................................................22

*Pearson v. Callahan*,
   555 U.S. 223 (2009) .............................................................................34, 39

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ..................................................................................32

*Powell v. McCormack*,
   395 U.S. 486 (1969) ..................................................................................13

*Prince v. Jacoby*,
   303 F.3d 1074 (9th Cir. 2002) ..................................................................18

*Psota v. New Hanover Twp.*,
   No. 20-5004, 2021 WL 6136930 (E.D. Pa. Dec. 29, 2021) ......................22

*R.F. through Fernandez v. Harrison Sch. Dist. No. 2*,
   924 F.3d 1309 (10th Cir. 2019) ................................................................14

*Real Alts., Inc. v. Sec'y Dep't of Health and Hum. Servs.*,
   867 F.3d 338 (3d. Cir. 2017) .....................................................................20

*Rivas Vazquez v. Lehigh Cnty.*,
   CV 21-4179, 2022 WL 35608 (E.D. Pa. Jan. 3, 2022) ............................33

*Rosenberger v. Rector and Visitors of Univ. of Virginia*,
   515 U.S. 819 (1995) .............................................................................18, 19

*Russman v. Bd. of Educ. City of Watervliet*,
    260 F.3d 114 (2d Cir. 2001)..................................................................................14

*S.H. v. Lower Merion Sch. Dist.*,
    729 F.3d 248 (3d Cir. 2013)..................................................................................28

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)....................................................................................9

*Saxe v. State College Area Sch. Dist.*,
    240 F.3d 200 (3d Cir. 2001)..............................................................................21, 32

*Schmader ex rel. Schmader v. Warren Cnty. Sch. Dist.*,
    808 A.2d 596 (Pa. Commw. Ct. 2002) ...................................................................30

*Sh.A. as Next Friend of J.A. v. Tucumcari Mun. Schs.*,
    No. CV 00-727, 2001 WL 37124874 (D.N.M. Sept. 12, 2001) ...............................14

*Shapiro v. Thompson*,
    394 U.S. 618 (1969)...............................................................................................24

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) (Gorsuch, J., concurring)........................................................18

*Simpson v. Kay Jewelers*,
    142 F.3d 639 (3d Cir. 1998)...................................................................................29

*Smith v. Wade*,
    461 U.S. 30 (1983).................................................................................................40

*Spadone v. McHugh*,
    10 F. Supp. 3d 41 (D.D.C. 2014) ..........................................................................12

*Steel Co. v. Citizens for Better Environment*,
    523 U.S. 83 (1998).................................................................................................11

*Sturm v. Clark*,
    835 F.2d 1009 (3d Cir. 1987).................................................................................23

*Tolbert v. Queens Coll.*,
    242 F.3d 58 (2d Cir. 2001).....................................................................................25

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014)...............................................................................................16

*TransUnion LL v. Ramirez*,
    594 U.S. 415 (2021)...............................................................................................11

*Van Zandt v. Thompson*,
  839 F.2d 1215 (7th Cir. 1988) ...................................................................17, 35

*Watson v. Abington Twp.*,
  478 F.3d 144 (3d Cir. 2007)................................................................................32

*White v. Salisbury Tp. Sch. Dist.*,
  588 F. Supp. 608 (E.D. Pa. 1984) .......................................................................38

*Whitfield v. Notre Dame Middle Sch.*,
  412 F. App'x 517 (3d Cir. 2011) .........................................................................39

*Williams v. Pennridge Sch. Dist.*,
  782 F. App'x 120 (3d Cir. 2019) .........................................................................27

**Statutes**

42 U.S.C. § 1983.......................................................................................... *passim*

42 U.S.C. § 2000d.................................................................................................24

Civil Rights Act Title VI.................................................................................. *passim*

**Contitutional Provision**

U.S. Const. amend I ......................................................................................... passim

U.S. Const. amend XIV .................................................................................1, 21

**Other Authorities**

Exec. Ord. No. 13899, 84 Fed. Reg. 68779 (Dec. 11, 2019)........................................25

Fed. R. Civ. P. 8 ...................................................................................................9

Fed. R. Civ. P. 12(b)(1)........................................................................................15

Fed. R. Civ. P. 12(b)(6)..........................................................................................9

ix

Defendants the School District of Philadelphia ("School District"), Richard Gordon IV ("Gordon"), Kiana Thompson ("Thompson"), and Rashida Stamps ("Stamps") (hereinafter, collectively the "Defendants") submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Amended Complaint for lack of standing and as a matter of law. Plaintiffs bring claims under the Establishment and Free Exercise Clauses of the First Amendment and the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, and Title VI of the Civil Rights Act of 1964, arising from a June 11, 2024 incident at the Academy at Palumbo ("Palumbo"), a public high school in the School District. (ECF No. 17, Compl. at 1-2 ¶ 1.) Plaintiffs include two students, John Hiester and Meru Parmar, who were attending Palumbo at the time of the incident, and a former student, M. Danowitz, along with their parents—Kathryn and Christopher Hiester, Jean Danowitz, and Catherine and Ratnadeep Parmar. The lawsuit names not only the School District as a Defendant but also several of its employees, including Assistant Superintendent Richard Gordon IV; Principal Kiana Thompson; Dean of Student Conduct Rashida Stamps; and two teachers from other schools, Kristin Luebbert and Keziah Ridgeway, who were not present at Palumbo during the incident.[1] For the reasons that follow, the Court should grant Defendants' Motion to Dismiss on all Counts of Plaintiffs' Amended Complaint.

## I.    PRELIMINARY STATEMENT

Plaintiffs' claims stem from a school investigation and response to a June 11, 2024, incident at the Academy at Palumbo, a public high school in the School District of Philadelphia. The incident occurred in the school's designated "Quiet Room," a neutral, voluntary space open to all students for reflection or prayer. In the final days of the school year—after classes and examinations had concluded and grades were submitted—four boys entered the Quiet Room.

---

[1]    Defendants Kristin Luebbert and Keziah Ridgeway are represented by separate counsel and therefore, claims against them are not addressed in this Motion to Dismiss.

Three[2] were enrolled students, and the fourth boy, M. Danowitz, was a former student not authorized to be on campus. Following complaints from other students regarding the boys' inappropriate behavior in the room, school officials promptly initiated an investigation and imposed a brief suspension on the two enrolled students. That suspension was later rescinded and, in any event, occurred at the very end of the school year and never interfered in the boys' class attendance.

These activities are representative of student safety incidents and disciplinary proceedings that school officials routinely confront, but they occurred during a period of extraordinary tension in schools across the country following the October 7, 2023 attack by Hamas on Israel and the ensuing conflict. The School District, like many others, long has had the difficult role of constitutional referee, tasked with balancing students' rights to free expression, the free exercise of religion, and freedom from governmental establishment of religion, while also maintaining safety, educational focus, and equal protection for all students in an already under-resourced environment. Here, the Quiet Room was intended as a neutral space to accommodate all students, consistent with the school's constitutional obligations. And when that space was disrupted, teachers and administrators at Palumbo acted in good faith, striving to respond promptly and fairly to investigate and address cross-complaints.

The United States Supreme Court has urged that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). The Amended Complaint describes educators responding conscientiously in a volatile environment while trying to balance the needs of and accommodate every student, not officials violating constitutional or statutory rights, and second-guessing those decisions contravenes the Supreme Court's guidance. This Court should

---

[2]  J2, a third student referenced in the Complaint, is not a Plaintiff in this matter.

#125450736v1

dismiss the Amended Complaint with prejudice on the following bases:

- Plaintiffs' claims under the Establishment and Free Exercise Clauses in Count I must be dismissed because Plaintiffs lack standing, their claims are moot, and they fail as a matter of law.

    o None of the Plaintiffs remain enrolled in the School District or reside within its boundaries, nor do they allege any intent to return to the School District.

    o Even if the Court were to reach the merits on this claim, the allegations fail as a matter of law. The "Quiet Room" at issue was a neutral, voluntary space open to all students for reflection or prayer, and its temporary, student-generated décor reflecting the faith practices of students who chose to use it reflects constitutional neutrality, not endorsement or suppression of faith.

    o The Complaint's allegations do not establish that any of the Plaintiffs were burdened in the free exercise of their religion, including M. Danowitz, who was not a student a Palumbo and was moreover not authorized to be on campus at the time.

- In Count II, Plaintiffs allege a Due Process violation of a Liberty Interest in Reputation. But the Complaint does not plausibly allege a "stigma-plus," instead it relies only on conclusory allegations that Defendants publicly made false statements against Plaintiffs and fails to allege the deprivation of a liberty or property interest. In light of these deficits Count II must be dismissed.

- Plaintiffs fail to state a claim as a matter of law in Count III where they seek to drown a neutral investigation and disciplinary actions against non-Jewish students in allegations of discrimination based on ancestry under Title VI merely because other Jewish students were present. Plaintiffs' attempt to recast "associational"

discrimination under Title VI because John Hiester and Meru Parmar were simply friends with M. Danowitz and J2, who are Jewish, finds no support in the statute or controlling precedent.

- Additionally, Counts I, II, and IV against the School District fail under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because Plaintiffs do not allege that any School District policy or custom, or adhesion to policy or custom, caused the alleged constitutional harms. These Counts must also be dismissed as duplicative against the Individual Defendants in their official capacities.

- The Individual Defendants must be dismissed as they are entitled to qualified immunity.

- Plaintiffs are barred from obtaining punitive damages as a matter of law against the School District and the Individual Defendants in their official capacities and the Plaintiffs fail to plead facts that demonstrate the requisite mens rea to recover punitive damages against the Individual Defendants in their individual capacities.

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs' Complaint describes a brief student incident involving an unauthorized visitor, M. Danowitz, along with John Hiester and Meru Parmer, who entered the school and a room designated as a "Quiet Room" that Plaintiffs falsely characterize as "effectively a Muslim-only zone" and who were accused of inappropriate behavior by students including those using the Quiet Room. (ECF No. 17 at 49 ¶ 187, 2 ¶ 1.)

The incident occurred on June 11, 2024, during the last week of the school year, when "little to no formal teaching takes place and students are generally free to come and go as they please within the school building." (*Id.* 15 ¶ 54.) Plaintiffs admit that although M. Danowitz had previously attended Palumbo, he was not a student at the time as he had transferred to a private

4

school for his sophomore year. (*Id.* at 10 ¶ 29; ECF No. 17-1, Ex. 11.) The School District later cited his presence on school grounds as a Code of Conduct violation in its investigation and discipline of Meru Parmer and John Hiester, who accompanied him that day. (ECF No. 17, at 28 ¶ 114.) While Plaintiffs allege that M. Danowitz "entered the Palumbo school building" with John Hiester that morning (despite not being enrolled) they claim it was not a violation of District rules because school officials observed M. Danowitz go through the front door and security. (*Id.* at 15–16 ¶¶ 56, 58.) Ultimately, all students were cleared of any disciplinary records from this incident after an administrative investigation. (*Id.* 29 ¶ 117 n.8.)

After entering the school, the boys visited the library, where they saw a small adjoining space with a sign that said "Quiet Room." (*Id.* at 17 ¶ 64.) Plaintiffs claim they saw a "Palestinian flag" on the window, which according to the attached exhibits appears to be a crude arrangement of colored craft paper, in the Palestinian flag's colors and shape. (*Id.*; ECF No. 17-1, Ex. 4.) They then entered the Quiet Room, where they observed "Islamic accoutrements and signs" and "two or three female students seated at the only table in the room." (ECF No. 17, at 18 ¶¶ 65 69, ECF No. 17-1, Ex. 4.) According to the girls' reports described in the Complaint, the boys "loudly announced that they 'hate Muslims,'" "declared that they were 'proud Zionists,'" and made inappropriate gestures—"humping the floor," "ripping posters off the wall," and "trashing the room." (*Id.* at 23 ¶ 92.) The Complaint acknowledges that this description came directly from the students who reported the incident to school officials, including Principal Kiana Thompson, that same afternoon. (*Id.*)

However, Plaintiffs dispute those allegations and instead allege that M. Danowitz, and a boy referred to as "J2" who is not a party to this lawsuit, both of whom are Jewish, "said a quick Jewish prayer in Hebrew" and that three female students in the room "burst out laughing." (*Id.* at 19 ¶ 74.) Meru Parmer, who is not Jewish, then entered the Quiet Room, after which M. Danowitz

#125450736v1

responded to the girls' laughter by asking, "How is me exercising my [First] Amendment right funny to you?" to which one of the girls replied, "Why are you guys even here?" *Id.* at 19 ¶¶ 74–75.) M. Danowitz alleges he responded by saying he "has a right to religion and a right to pray" and added he was a "proud Zionist." (*Id.* at 19 ¶ 76.) J2 then began singing "Am Israel Chai" a Hebrew song that means "The People of Israel Live," and M. Danowitz "stood up, took a couple of steps, and did a handstand," after which John Hiester, who is also not Jewish, entered the room. (*Id.*) Plaintiffs further allege that before exiting, one boy "removed a sign that had been hanging on the wall and gently placed it on the floor, where he left it leaning against the wall." (*Id.* at 20 ¶ 79.) The entire encounter lasted less than ten minutes and was filmed by J2. (*Id.* at 19–20 ¶ 76.) The Amended Complaint admits that J2 recorded the video to show "that the room was not inclusive of religions other than Islam." (*Id.* at 19 ¶ 74 n.5.) The Complaint does not allege that any Plaintiff had visited the Quiet Room or raised concerns about the Quiet Room to school officials prior to that date.

Plaintiffs assert that a "Quiet Room" at Palumbo served as an "exclusively. . . Muslim prayer space," despite the lack of any alleged policy, rule, announcement, or written policy to that effect. (*Id.* at 49 ¶ 187.) Indeed, this allegation is contradicted by Plaintiffs' own admissions as the room was labeled a "Quiet Room," confirmed by a picture of the door attached as an exhibit, and, the Complaint's admission that the room had "no indication that there was any gender or religious restriction on use or occupancy of the room when observing the room from the outside." (*Id.* at 17 ¶ 64; ECF No. 17-1, Ex. 4.) As a Parent Plaintiff describes in an attachment to the Complaint, "[n]owhere in the room were there signs stating that it was a Muslim-only room or that there were certain hours designated for men-only or women-only" and "the boys had mentioned that the room is available to all students who want to pray during the day." (*Id.* at 32 ¶ 126; ECF No. 17-1, Ex. 10.) Thus, by the Plaintiffs' own account, the School District had no policy restricting the room's

6

use based on religion. It was intended as a neutral space open to any student seeking privacy, reflection, or prayer. The Quiet Room's appearance or contents—such as prayer rugs or religious items—were the result of student-generated use in a school where Muslim students frequently used a room that was "available to all students" *Id.*

Plaintiffs claim that after leaving the Quiet Room on June 11th, they were immediately harassed and threatened by others based on these false rumors. Yet Plaintiffs acknowledge that Principal Thompson and Dean of Students Stamps immediately began investigating, requesting written incident reports and contacting parents. (*Id.* at 22 ¶ 89; 24–25 ¶¶ 97–101; ECF No. 17-1, 5.) Faced with conflicting accounts and rising tension among students, Principal Thompson consulted Assistant Superintendent Gordon, who "instructed [her] to suspend" the boys while the investigation continued to proceed. (ECF No. 17 at 28 ¶ 114.) The students were informed that the incident involved their knowledge of an unauthorized visitor, M. Danowitz, who they "willingly walked around the building," and therefore, John Hiester and Meru Parmer were notified at 10 pm on June 12, 2024, of their suspension. (*Id.* at 59 ¶ 228.) This occurred during the final three days of the school year, after classes and examinations had concluded, grades had closed, and little to no formal teaching was taking place. (*Id.* at 15 ¶¶ 53, 54.)

Over the summer, the School District's Office of School Safety Investigations Unit continued its review. (*Id.* at 38 ¶ 146.) The students and their families were invited to submit statements and materials, including the cellphone video they claimed exonerated them. (*Id.* at 32 ¶ 126-27; ECF No. 17-1, Ex. 8.) After review, the School District rescinded the suspensions and removed all references from their disciplinary records. (ECF No. 17 at 29 ¶ 117 n.8.) The Complaint contains no allegation that any School District employee publicly identified the students or issued statements accusing them of harassment. To the contrary, the only referenced communication by the School District about the matter—a general letter to Palumbo families on

7

August 19, 2024—did not name any student and reinforced to the school community that rumors circulating on social media should not be relied upon and that harassment of any kind would not be tolerated. (*Id.* at 47 ¶ 176; ECF No. 17-1, Ex. 17.)

All three students and their families now reside outside the School District. (ECF No. 17 at 8–9 ¶ 26, 10 ¶ 30.) John Hiester and Meru Parmer now attend public school outside the School District. M. Danowitz left Palumbo to attend St. Joseph's Preparatory School prior to this incident and has not re-enrolled. (*Id.* at 10 ¶ 29; ECF No. 17-1, Ex. 11.) John Hiester, Meru Parmar, and M. Danowitz are now all seniors in high school, and none have alleged that they wish to return as students to Palumbo or that their parents will move back into the School District. (ECF No. 17, at 55 ¶ 211.) Despite alleging that they were driven out of the School District, the Parmars' claim that they have a younger child who remains enrolled in the School District. However, as the family now resides in the suburbs, they fail to articulate a legitimate basis for the child's enrollment in the School District, including any required payment of tuition for non-residents. (*Id.* at 49 ¶ 184; 51 ¶ 195; 65 ¶ 253.)

Plaintiffs bring suit following a two-day suspension, rescinded in the summer of 2024 involving admittedly conflicting allegations of an unauthorized visitor and cross-claims of harassment. The School District and its employees promptly gathered information and worked to maintain order, while balancing student safety and rights. Nothing in the Amended Complaint plausibly suggests that the School District or its staff acted with discriminatory intent or established a "Muslim-only" space; instead, the allegations reflect educators responding in good faith to a complex and fast-moving situation, when exams were done, administrators were

preparing for graduation, and there were only three days left of the school year**.** (*Id.* at 15 ¶¶ 53–54.)

III.    **LEGAL STANDARD**

Federal district courts are required to dismiss a complaint when the allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to survive a motion to dismiss, the "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotations omitted). Allegations which are "no more than conclusions, are not entitled to the assumption of truth." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (internal quotations omitted)). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Third Circuit has reiterated that "the factual and legal elements of a claim should be separated" when district courts consider Rule 12(b)(6) motions, legal conclusions may be disregarded, and the facts alleged in the complaint must be sufficient to show plaintiff has a plausible claim for relief, i.e., a plaintiff must plead facts to show entitlement to relief. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). The Court need not consider legal conclusions, "conclusory statements," "bare-bones allegations," or "threadbare recitals" when deciding a motion to dismiss. *Id.* at 210 (citing *Iqbal*, 556 U.S. at 678) (internal quotations omitted). Applying this standard, all counts of Plaintiffs' Amended Complaint should be dismissed as a matter of law.

#125450736v1

## IV.     LEGAL ARGUMENT

### A.     Count I of Plaintiffs' Complaint Should be Dismissed for Lack of Standing and As a Matter of Law

#### 1.     Plaintiffs' Claims Under the Establishment and Free Exercise Clauses Should Be Dismissed for Lack of Standing, Mootness, and Failure to Plead Cognizable Damages

Plaintiffs' claims under the Establishment and Free Exercise Clauses of the First Amendment in Count I of the Complaint fail at the threshold because Plaintiffs lack standing and, even if they did have standing, those claims are now moot. Plaintiffs seek injunctive relief as well as compensatory and punitive damages for Count I of their Complaint. (ECF No. 17 at 51–52 ¶¶ 196–97.) But Plaintiffs lack standing to seek injunctive relief because they are not enrolled in the School District, reside outside the School District's boundaries, and John Hiester, Meru Parmar, and M. Danowitz are all seniors set to graduate. None have alleged an intention or ability to return to Philadelphia. Although the Parmar family attempts to manufacture standing by asserting that they have a younger son and "they always intended this son to attend high school within the District," this is directly undercut by their allegation that they live outside of it, which renders all their children ineligible to return. (ECF No. 17 at 10 ¶ 30; 49 ¶ 184; 51 ¶ 194; 65 ¶ 253.)[3] There is no ongoing or future injury that such injunctive relief could redress. And Plaintiffs' attempt to salvage standing by asserting damages cannot succeed because Plaintiffs allege no actual injury fairly traceable to the purported constitutional violation. Count I must be dismissed with prejudice.

---

[3]     The Complaint contains an apparent typographical error. In one location, the Parmars allege they have a son currently attending school in the District, which would be a violation of Commonwealth enrollment requirements given that they also allege elsewhere that they live outside the District, rendering their children ineligible for enrollment without payment of tuition. (*Id.* at 10 ¶ 30; 51 ¶ 194; 65 ¶ 253) Elsewhere in the Complaint, they allege that they always intended for this child to attend the District, which appears to be what was intended. (*Id.* at 49 ¶ 184.) The School District has verified its records and confirms that the Parmars currently do not have any child enrolled in the District.

#125450736v1

i.      **Count I Must Be Dismissed for Lack of Standing for Either Injunctive Relief or Damages**

To establish standing, a plaintiff must show (1) a concrete and particularized injury in fact that is actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). The plaintiff has the burden of demonstrating these requirements are met at the "commencement of the litigation," will continue throughout its duration, and must do so "separately for each form of relief sought." *Id.* at 184, 189; *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). The harm must be concrete, a requirement which is not established by the availability of a statutory cause of action alone. *TransUnion LL v. Ramirez*, 594 U.S. 415, 429 (2021). And the plaintiff bears the burden of establishing each of these requirements before a court may reach the merits of a claim. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 102–04 (1998). In cases where a plaintiff seeks injunctive relief, the plaintiff must allege some likelihood of future injury. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105-06 (1983). But a plaintiff must "demonstrate standing separately for each form of relief sought." *Friends of the Earth*, 528 U.S. at 185. Therefore, just because a plaintiff has standing to seek injunctive relief does not, on its own, establish standing to seek retrospective damages. *TransUnion LLC*, 594 U.S. at 436.

Plaintiffs cannot meet these requirements. Plaintiffs seek preliminary and permanent injunctive relief "prohibiting Defendants' treatment of Plaintiffs and all other students similarly situated in violation of Plaintiffs' Constitutional rights." (ECF No. 17 at 52 ¶ 196.)  Such relief cannot redress past alleged injuries arising from the June 11, 2024, incident, as none of them remain a student within the School District or reside within its boundaries. (ECF No. 17 at 8–9 ¶ 26; 10 ¶ 30; ECF No. 17-1, Ex. 11.) Plaintiffs John Hiester and Meru Parmar moved outside of

Philadelphia and attend public schools outside the School District. M. Danowitz was not a student at the time of the incident, having transferred to St. Joseph's Preparatory School in September of 2023. (*Id.*) Further, because M. Danowitz had left the School District months before the alleged events, he cannot show any cognizable injury by the School District sufficient for standing, since he was not a student with a right to be in the Quiet Room and was not disciplined by Defendants. *See Spadone v. McHugh*, 10 F. Supp. 3d 41, 43–44 (D.D.C. 2014) (holding former cadet lacked standing because he was no longer enrolled); *see also Freedom from Religion Foundation, Inc., v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 478 (3d Cir. 2016) (noting "a passerby who is not a member of the community, and who faces no risk of future contact, may not have an injury in fact sufficient to confer standing."); *Lyons,* 461 U.S. at 105 (finding no standing for injunctive relief because there was no real and immediate threat that plaintiff would again be placed in a chokehold by police officers for a traffic violation).

Nor may Plaintiffs attempt to manufacture standing by alleging in their Amended Complaint for the first time damages for this claim. Plaintiffs fail to plead damages proximately caused by any alleged Establishment Clause violation and that the Individual Defendants acted with the requisite mens rea required to recover punitive damages. Plaintiffs seek damages on the theory that the District maintained a "Muslim prayer room," allegedly violating the Establishment Clause, and that Plaintiffs therefore "left the District." This theory is baseless because leaving the School District and moving has no connection to access to or use of a Quiet Room, as prayer can occur anywhere and the existence of a Quiet Room is not a plausible reason to leave the District. Nor did Plaintiffs plead that they ever previously wanted to use the Quiet Room to pray and were prohibited from such requested prayer exercises. Even assuming arguendo that Plaintiffs could plead an Establishment Clause violation, Section 1983 compensatory damages require a plausible allegation of actual injury caused by the constitutional violation; damages cannot be recovered for

the abstract value of a constitutional right. *Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986).

Here, Plaintiffs only plead conclusory allegations to establish causation between the alleged "prayer room" and Plaintiffs' claimed loss. The Complaint does not allege Plaintiffs were coerced to participate in religious activity, were disciplined for declining religious activity, or otherwise suffered a concrete injury attributable to the School District's alleged conduct. Instead, the damages theory rests on Plaintiffs allegations that they chose to leave the School District because of the existence of a Quiet Room that they never attempted to use for prayer during the course of their two years at Palumbo. Such allegations fail to plausibly plead but-for and proximate causation and therefore cannot support compensatory damages. At most, Plaintiffs may pursue nominal damages for an alleged constitutional violation. *See Freedom From Religion Found., Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 480 (3d Cir. 2016) (addressing Establishment Clause claim involving nominal damages).

ii.    **Count I Must Be Dismissed as Moot Because None of the Plaintiffs Are Eligible to Enroll in the School District or Allege That They Intend to Do So.**

Even assuming the Plaintiffs had standing, their claims are now moot. A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Federal courts consistently hold that once a student graduates or otherwise leaves the school and has no interest or prospect in returning, a request for injunctive relief is rendered moot because the student will no longer be affected by the challenged practice. *See Donovan,* 336 F.3d at 217 (finding a challenge to a school policy was moot when [the student] has graduated and will never again return [to the school] as a student."); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (*en banc*); *Altman v. Bedford Cent.*

13

*Sch. Dist.*, 245 F.3d 49, 71-74 (2d Cir. 2001) (concluding that student's graduation and other children's relocation outside the school district mooted plaintiffs' claims); *K.Y. through Yu v. Schmitt*, 799 F. App'x 485, 486-87 (9th Cir. 2020) (finding that claim for injunctive relief was moot because, as a senior, plaintiff could not serve in student government the following year); *R.F. through Fernandez v. Harrison Sch. Dist. No. 2*, 924 F.3d 1309, 1315 (10th Cir. 2019) (citing *Hoing v. Doe*, 484 U.S. 305, 318 (1988) (holding claims moot as to twenty-four year old who is no longer eligible to receive state educational services)); *Fisk v. Bd. of Trs. of California State Univ.*, No. 22-CV-173, 2023 WL 6051381, at *10 (S.D. Cal. Sept. 15, 2023); *Sh.A. as Next Friend of J.A. v. Tucumcari Mun. Schs.*, No. CV 00-727, 2001 WL 37124874, at *2 (D.N.M. Sept. 12, 2001); *c.f.*, *New Kensington*, 832 F.3d 469, at 473–74, 481 (3d Cir. 2016) (recovery possible where Plaintiff *lived* within the school district and affirmatively stated that she intended to enroll her child in the same school if the challenged religious monument were removed).

Here, Plaintiffs have no ongoing relationship with the School District, and their anticipated graduation in the coming months only underscores the absence of any continuing harm. Plaintiffs have not alleged that they intend to return to Palumbo in the four months until they graduate high school, and the Hiester and Parmar families have not indicated that they intend to move back to the School District and therefore are ineligible to enroll any of their children in Palumbo or any other public school in Philadelphia.[4] *See Russman v. Bd. of Educ. City of Watervliet*, 260 F.3d 114, 119 (2d Cir. 2001) (finding claims moot where student no longer attends school, and the parents expressed no intent to re-enroll)*; Fisk*, 2023 WL 6051381, at *10 (concluding claims were moot because there was no suggestion in the complaint that transferred students would return and be subjected to the alleged violations).

---

[4]       As noted, the Parmars assert that they currently have a younger child enrolled in the School District, but this allegation is contradicted by their assertion they now live outside of the School District, making their children ineligible for enrollment. (ECF No. 17 at 10 ¶ 30; 51 ¶ 195; 65 ¶ 253.); *24 P.S. 1302*.

Nor does any exception to mootness apply. The "capable of repetition, yet evading review" exception is "extremely narrow" and requires both that the challenged action be too short in duration to be fully litigated and that the same party is likely to be subjected to it again. *Donovan*, 336 F.3d at 217. Neither condition is met here. School policies are not inherently too short-lived to be reviewed, and such policies will not always evade review as other students can challenge them. *Id.* (noting exception not met as a Bible club ban will not always evade review as a younger student could challenge it with a long window to litigate the issue). Further, there is no reasonable expectation that these Plaintiffs—who reside outside the School District and will soon graduate— will ever again encounter the alleged conduct. *See Altman*, 245 F.3d at 71 (exception inapplicable where students graduated and left district).

To the extent Plaintiffs attempt to rely on *New Kensington,* that case is distinguishable. Here, by contrast, none of the Plaintiffs have alleged any intent to return to the School District, and one was not even a student during the relevant period. The Parmars allege that a younger member of their family is currently enrolled in the School District, but, as already noted, this allegation is contradicted by their repeated allegation that they were forced to leave the School District entirely and now reside in the suburbs. (ECF No. 17 at 10 ¶ 30.) Thus, unlike the plaintiff in *New Kensington* who still resided within the school district and faced no other barrier to enrolling her child in the school, here, the Plaintiffs have not pled that they are eligible to enroll in the School District and would do so. Because there is no realistic prospect that any Plaintiff will again be affected by the School District's conduct, *New Kensington* provides no basis for jurisdiction. This Court cannot grant effective relief or adjudicate a controversy that no longer exists. Accordingly, Count I should be dismissed under Rule 12(b)(1).

### 2.    Plaintiffs' Averments Show No Establishment Clause Violation Exists

Plaintiffs' Establishment Clause claim in Count I fails as a matter of law because the School District's provision of a neutral, voluntary "Quiet Room" for student reflection or prayer neither

endorses nor establishes religion under the Supreme Court's "history and tradition" framework. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022). The First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. For decades, courts applied the three-part test from *Lemon v. Kurtzman*, 403 U.S. 602 (1971), assessing whether government action (1) had a secular purpose; (2) had as its principal or primary effect on the advancement or inhibition of religion; and (3) fostered an excessive entanglement between government and religion. *Id.* at 612–13. That framework proved "a misadventure" that substituted subjective speculation for constitutional analysis and "left us only a mess." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 84 (2019) (Gorsuch, J., concurring). Recognizing that problem, the Supreme Court in *Kennedy v. Bremerton School District*, expressly rejected *Lemon* and its "endorsement" offshoot, holding that Establishment Clause analysis must instead be guided by "reference to historical practices and understandings." 597 U.S. at 535 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). The Court emphasized that neutrality toward religion does not "make it necessary for government to be hostile to religion" or "to purge from the public sphere anything an objective observer could reasonably infer endorses or partakes of the religious." *Id.* at 535, 541 (internal quotations omitted). Moreover, the Court emphasized that the Establishment Clause cannot be used as "a modified heckler's veto" to silence religious expression merely because others might take offense. *Id.* at 534.

 Applying that standard here, Plaintiffs' allegations do not state a constitutional violation. Plaintiffs admit that the "Quiet Room" was labeled as such, bore no signage limiting entry by religion or gender, and was available to all students who wished to pray, meditate, or reflect privately. (ECF No. 1 at 17 ¶ 64; ECF No. 17-1, Ex. 4.) In a school with a substantial Muslim student population—some whom might pray multiple times each day—it is unsurprising that the Quiet Room's included materials and supplies are from the students who used it most frequently.

Temporary student-generated items such as prayer rugs or modest posters do not transform a neutral, student-accessible space into an unconstitutional establishment of religion. Indeed, the free exercise clause does not permit the state to confine religious speech. *See, e.g., Chandler v. Siegelman,* 230 F.3d 1313, 1316 (11th Cir. 2000) ("[t]he Free Exercise Clause does not permit the State to confine religious speech to whispers or banish it to broom closets").

While there is a lack of case law regarding the constitutionality of quiet rooms or prayer rooms in schools, the Seventh Circuit's decision in *Van Zandt v. Thompson*, 839 F.2d 1215 (7th Cir. 1988), provides particularly persuasive guidance. There, the court upheld the constitutionality of a "Prayer Room" in the Illinois State Capitol expressly designated for prayer and meditation. *Id.* at 1216. The court found that even under *Lemon*, the room served a permissible secular purpose—allowing visitors to the prayer room to set their own agenda as to prayer or meditation— and that its principal effect was not to advance religion but to recognize the place of "spiritual values in their work." *Id.* at 1219, 1221. It also concluded that no excessive entanglement existed because the room was open to people of all faiths and subject to neutral oversight. *Id.* at 1223. The court emphasized that a government's acknowledgment of religion's role in public life does not contravene the Establishment Clause because the Nation's history is replete with similar accommodations. *Id.* at 1221.

If a dedicated prayer room—explicitly intended for religious use—in a state capitol passed constitutional muster even under *Lemon*, then a school's provision of a quiet, voluntary, student-driven space for meditation and prayer cannot plausibly constitute an Establishment Clause violation under the far more historically grounded *Kennedy* standard.

Moreover, this case lacks the coercive elements that animated the school-prayer decisions in *Engel v. Vitale*, 370 U.S. 421 (1962), and *Lee v. Weisman*, 505 U.S. 577 (1992). Those cases turned on the government's direct sponsorship of religious exercises that compelled participation

in school-sponsored prayer by captive, impressionable students. The Quiet Room, by contrast, was entirely voluntary, not part of any curriculum or event, and students could enter or avoid it freely. The Supreme Court stressed that coercion was "among the foremost hallmarks of religious establishments the framers sought to prohibit." *Kennedy*, 597 U.S. at 537. Here, no such coercion is alleged or implied.

Further, the fact that one religious group—such as Muslim students—may make greater use of the Quiet Room, or that student-generated Muslim artwork or symbols may appear more frequently , does not alter the constitutional analysis. Courts recognize that government neutrality toward religion does not mean eradicating all traces of faith from public institutions, and that they are not required to police and suppress religious expression to achieve it. *See Shurtleff v. City of Boston*, 596 U.S. 243, 287-88 (2022) (Gorsuch, J., concurring) ("no historically sensitive understanding of the Establishment Clause can be reconciled with a rule requiring governments to 'roa[m] the land, tearing down monuments with religious symbolism and scrubbing away any reference to the divine.'") (quoting *Am. Legion*, 588 U.S. at 56); *Hilsenrath on behalf of C.H. v. Sch. Dist. of the Chathams,* 136 F.4th 484, 492-93 (noting that teaching about religion or permitting religious expression in schools does not automatically violate the Establishment Clause). Further, it does not violate the Establishment Clause for a public school "to grant access to its facilities on a religion-neutral basis to a wide spectrum of student groups, including those that use meeting rooms for sectarian purposes, accompanied by some devotional exercises." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 842 (1995) (a university violated the free speech rights of a Christian publication when it denied student activity printing funds available to other student groups because of the publication's religious viewpoint); *see also Prince v. Jacoby,* 303 F.3d 1074, 1092 (9th Cir. 2002) ("[p]roviding meeting space during student/staff time, school supplies and bus transportation is not a direct payment to" a Christian

student organization, World Changer's "coffers, even though it may facilitate the World Changer's own religious speech.").

The *Rosenberger* Court applied this principle using a hypothetical situation analogous to that of the Quiet Room here:

> "a public university may maintain its own computer facility and give student groups access to that facility, including the use of the printers, on a religion neutral, say first-come-first-served, basis. If a religious student organization obtained access on that religion-neutral basis and used a computer to compose or a printer or copy machine to print speech with a religious content or viewpoint, the State's action in providing the group with access would no more violate the Establishment Clause than would giving those groups access to an assembly hall."

*Rosenberger,* 515 U.S. at 843. Likewise, a Quiet Room—made available on a religion-neutral basis and accessible to all students—does not violate the Establishment Clause. Just as a university computer or printer may be used by students to generate religious speech without constitutional infirmity, students praying in a Quiet Room or student artwork or decorations placed by students within the Quiet Room are no different. There is a "crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. of Westside Cmty. Schs. v. Mergens,* 496 U.S. 226, 250 (1990). Similarly, Muslim prayer in the Quiet Room and student artwork or symbols reflecting Islamic themes constitute private speech, not government endorsement, so long as the Quiet Room remains open to all students on a religion-neutral basis— which it is here.

In sum, Plaintiffs' allegations—even if assumed true—do not plausibly suggest that the School District endorsed, established, or coerced religious practice. The Quiet Room's decor was student-led, not imposed by the school, and the Quiet Room's availability for voluntary, individual reflection or prayer is consistent with the Nation's history of religious accommodation, not establishment. The Establishment Clause does not require that public schools purge religious

expression simply to maintain neutrality. The Quiet Room complies with those limits, and therefore Plaintiffs' Establishment Clause claim must be dismissed with prejudice.

### 3.    Count I's Free Exercise Clause Claim Fails Because There Was No Substantial Burden on Religious Practice

Plaintiff Jean Danowitz's brings a Free Exercise Clause claim in Count I, as guardian for M. Danowitz, which fails as a matter of law, and as noted above because there is no standing to assert it. *See Section I(A)(1)(i)-(ii), supra*. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. Government action violates the Free Exercise Clause of the First Amendment only if it (1) is not neutral or generally applicable, and (2) imposes a substantial burden on religious exercise. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 542 (1993). Laws and actions that are facially neutral and generally applicable are subject only to rational basis review, not strict scrutiny. *Emp. Div. v. Smith*, 494 U.S. 872, 879, 886 n.3 (1990). "[A] plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kennedy,* 597 U.S. at 525 (internal quotations omitted). "Offensive content that does not penalize, interfere with, or otherwise burden religious exercise does not violate Free Exercise rights." *California Parents for Equalization of Educ. Materials v. Torlakson,* 973 F.3d 1010, 1020 (9th Cir. 2020). This is so even where there's conduct or material that plaintiffs may find "offensive to their religious beliefs." *Id; Real Alts., Inc. v. Sec'y Dep't of Health and Hum. Servs.,* 867 F.3d 338, 361 (3d. Cir. 2017) (holding that the possibility others might avail themselves of services found to be offensive to plaintiffs' religious beliefs was not a burden).

The Complaint alleges no facts suggesting that the School District burdened M. Danowitz's religious exercise. To the contrary, the School District permitted students of all faiths to use the

20

Quiet Room for voluntary reflection or prayer. Plaintiff claims that certain students mocked or disagreed with M. Danowitz's religious conduct and his support for the State of Israel inside the Quiet Room, but the First Amendment protects against governmental interference, not peer disagreement or social reaction. *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001). The allegations show that the School District responded to a disruptive incident by investigating the incident, not by restricting religious practice. The investigation and temporary suspensions of Meru Parmer and John Hiester, which were later rescinded, were based on disciplinary policy violations stemming from M. Danowitz's status as an unauthorized visitor—not on his religious expression.  Moreover, M. Danowitz was never subjected to the suspension because he was not a student at the time.

M. Danowitz was not a student, received no punishment from the School District for his unauthorized entry, and his religious practices were not burdened by any conduct on campus. Because the School District's conduct was neutral, generally applicable, and did not impose any burden on religious practice, Jean Danowitz, on behalf of her son M. Danowitz, cannot establish a Free Exercise violation. Her claim should be dismissed with prejudice.

**B.    Count II Must be Dismissed Because Plaintiffs Fail to Plead Facts Sufficient to Establish Defendants Violated Plaintiffs' Liberty Interest in Reputation**

In Count II, Hiester and Parmar Plaintiffs claim a violation of their Liberty Interest in Reputation under Section 1983 and the Due Process Clause of the Fourteenth Amendment. To support this claim, they allege Defendants (1) falsely accused John Hiester, Meru Parmar, and M. Danowitz of wrongdoing, (2) that each Defendant publicly substantiated these accusations, (3) that the disseminations of these accusations led students at Palumbo and other schools to believe these allegations and make threats against Plaintiffs, and (4) that Defendants Thompson, Gordon, and Stamps had actual knowledge of these threats and took no action to protect Plaintiffs against them. (*Id.* at 53–54 ¶¶ 201–206.) As a result, Plaintiffs allege they were forced to move out of the school

21

district so that John Hiester and Meru Parmar could attend public school in another district. (*Id.* at 55 ¶¶ 209–10.) Thus, they assert that not only were their liberty interests in reputation harmed, but also their rights to attend the public school in the school district of their choice and to choose where in the United States they reside. (*Id.* at 56 ¶ 214.)

It is well-settled that reputational harm standing alone does not state a claim for relief under the Due Process Clause or Section 1983. *See Paul v. Davis*, 424 U.S. 693, 701 (1976); *Clark v. Twp of Falls*, F.2d 611, 619 (3d Cir. 1989). Rather, to assert a claim "for deprivation of a liberty interest in reputation under Section 1983, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Psota v. New Hanover Twp.*, No. 20-5004, 2021 WL 6136930, at *14 (E.D. Pa. Dec. 29, 2021) (emphasis in original). To satisfy the "stigma" prong, a plaintiff must show that the stigmatizing statement was (1) made publicly, and (2) was false. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). The "plus" prong requires the deprivation of some other liberty or property interest recognized by law. *Id.* at 236.

Plaintiffs make only conclusory allegations, without factual basis, that each Defendant publicly substantiated the allegations. In contrast to these conclusory statements, curiously, Plaintiffs' Exhibit 5 to the Compliant contains more than 15 student witness statements describing the incident –who formed their own opinions about the events that occurred. (ECF No. 17-1, Ex. 5.) The "court may also reject factual claims that are contradicted by documents integral to the pleadings." *Koger v. Allegheny Cty. Intermediate Unit*, C.A. No. 10-1466, 2011 U.S. Dist. LEXIS 45330, at *4 (W.D. Pa. Apr. 27, 2011) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)). Plaintiffs reference and rely on this exhibit as integral to the claims in the Amended Complaint. Accordingly, this Court can, and should, consider the exhibit in determining this motion to dismiss. *See In re Burlington Coat Factory Securities Litigation,* 114 F3d. 1410, 1426 (3d Cir. 1997) ("a 'document integral to or explicitly relied upon in the complaint' may be

22

considered 'without converting the motion [to dismiss] into one for summary judgment'"). Plaintiffs' exhibits demonstrate that students talked amongst themselves about events witnessed by students in and near the Quiet Room—this conduct cannot be imputed onto Defendants. *See Nicole K. By and Through Peter K. v. Upper Perkiomen Sch. Dist.*, 964 F. Supp. 931, 936 (E.D. Pa. 1997) (noting that a school district is not liable for the actions of its students). Plaintiffs' allegations are in truth an objection to the District's implementation of a Title VI investigation that it is compelled to complete in the face of harassment allegations made by Muslim students.

While Plaintiffs also point to a letter issued by the School District and Thompson to Palumbo students and parents, that letter did not name or otherwise expressly implicate any of the Plaintiffs; instead, it stated only that "allegations of harassment and discrimination had been made at the end of the prior school year" and reminded the school community that rumors circulating on social media should not be relied upon and that harassment of any kind would not be tolerated. (ECF No. 17 at 47 ¶ 176; ECF No. 17-1, Ex. 17.) These are exactly the type of supportive measures schools are compelled to provide students when investigating and responding to allegations of harassment.

Plaintiffs' conclusory allegations, undermined by their own evidence, cannot demonstrate stigma. Thus, they fail to satisfy the stigma prong.

Plaintiffs have also failed to satisfy the plus prong. Plaintiffs allege three harms that resulted from their reputational injuries: financial (associated with moving out of the School District), violation of their right to attend the public schools of the school district of their residence, and violation of their right to choose where in the United States to reside. (ECF No. 17 at 56 ¶ 214.) Plaintiffs' allegations of financial harm do not satisfy the plus prong. *See Sturm v. Clark*, 835 F.2d 1009, 1012–13 (3d Cir. 1987) (holding financial harm resulting from government defamation alone is insufficient to establish a liberty interest in reputation).

23

The remaining alleged injuries are likewise insufficient. Plaintiffs are attending public school in the district within which they reside consistent with the state statute cited by Plaintiffs, but that statute does not confer—nor do Plaintiffs allege it does—that someone has a right to attend the public school of someone's choosing, and *Shapiro v. Thompson*, 394 U.S. 618 (1969), does not recognize a protected right to choose where one lives in the United States as Plaintiffs allege, but rather a right to travel. And, even assuming that those interests are sufficient to satisfy the "plus" prong, Plaintiffs' suggestion that Defendants, by investigating allegations of harassment and the presence of an unauthorized person on school grounds, interfered with their ability to live where they want or attend school within their district is conclusory.

Count II must be dismissed with prejudice for failing to state a claim upon which relief can be granted.

### C.    Count III Fails as a Matter of Law

#### 1.    Plaintiffs Impermissibly Attempt to Expand Title VI of the Civil Rights Act Beyond Its Statutory Boundaries

Plaintiffs Meru Parmer and John Hiester, neither of whom are Jewish, are the only Plaintiffs asserting a Title VI claim in Count III. They base their Title VI claim not on their own racial identity or national origin, but on a grievance tied to campus discord over the Israel-Palestine conflict and vicarious indignation over how their Jewish friends, J2 and M. Danowitz, were treated. M. Danowitz, as a non-student during the events giving rise to the allegations in the Complaint, is ineligible to bring a Title VI claim, and J2 is not a party to this action. Nonetheless, Plaintiffs seek to stretch Title VI into a vehicle to challenge Palumbo's alleged "pro-Palestinian" and "anti-Zionist" climate. But Title VI prohibits only intentional discrimination "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. It does not protect religion, political ideology, theological viewpoints, disagreements about Israel, or against purportedly unfair disciplinary decisions without discriminatory intent. *See Alexander v. Sandoval*, 532 U.S. 275, 280–83 (2001);

*Landau,* 780 F. Supp. 3d at 555 (rejecting that anti-Israel speech is intrinsically anti-Semitic); *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020) (Title VI does not proscribe discrimination based on religion, and "allegations of subjective views. . . fail to give rise to an inference of intentional discrimination, much less to an inference of deliberate indifference to discrimination").

Nor does Title VI grant students a "vicarious" right to sue on behalf of peers. Rather, Plaintiffs must allege that they are members of a protected class and that there is a plausible causal nexus between the adverse action and Plaintiffs' actual or perceived race or national origin. *Canaan v. Carnegie Mellon Univ.*, 760 F. Supp. 3d 306, 321 (W.D. Pa. 2024) (plaintiff must plead facts establishing a "causal nexus between the harm suffered and [his] membership in a protected class"); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (Title VI plaintiff must show that intentional discrimination "on the basis of race" was a "substantial" or "motivating factor" in the defendant's actions). They also must show an "appropriate person" had (1) "actual knowledge" of discrimination and (2) responded with "deliberate indifference." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Plaintiffs do not meet this standard. Trying to convert John Hiester's and Meru Parmer's disciplinary consequences—later revoked—would improperly enlarge the class of individuals who may sue for discrimination to include students who simply share the political and ideological views of their friends.

### 2.    Count III Does Not Plausibly Allege a Protected-Class Nexus or Associational Grievances

Although discrimination against Jewish individuals may fall within Title VI when based on perceived race, ethnicity, or ancestry, Hiester and Parmar's allegations foreclose any such theory here. *See* Exec. Ord. No. 13899, 84 Fed. Reg. 68779 (Dec. 11, 2019) ("Discrimination against Jews may give rise to a Title VI violation when the discrimination is based on an individual's race, color, or national origin"); *Landau*, 780 F. Supp. 3d at 557 (noting that precedent

classifies "antisemitic harassment and discrimination as tantamount to racial discrimination"). Plaintiffs expressly plead that they are not Jewish and do not speak Hebrew. (ECF No. 17 at 11 ¶ 34.) They instead allege Meru Parmar is "ethnically Indian-American," but nowhere do Plaintiffs claim that Indian ancestry had anything to do with the discipline or any alleged harassment. (*Id.* at 10 ¶ 30.) Meanwhile, John Hiester's race or national origin is not pled at all, other than a vague and undifferentiated conclusion that Defendants committed discriminatory acts against all three minors—John Hiester, Meru Parmer, and M. Danowitz—"solely because the Minor Plaintiffs are not Muslims and were, or were perceived to be, Jewish," and that "some Defendants" held the "erroneous belief . . . that all of the Boys were Jewish" without specifying to whom this applied, by whom, or any factual basis. (*Id.* at 6, 63–4 ¶¶ 16, 248.) Yet Plaintiffs later allege that Principal Thompson, during the Office of School Safety's investigation, "knew or should have known" that Meru Parmer and John Hiester were not Jewish. (*Id.* at 39 ¶ 149.) These allegations eliminate any reasonable inference that any decision maker with the School District misidentified John Hiester or Meru Parmar as Jewish or that their discipline was connected to any protected characteristic.

Recognizing these defects, Plaintiffs attempt to recast their claim as one for "associational discrimination," arguing they were discriminated against "on the basis of their association with Jewish students M. Danowitz and J2" citing *Kengerski v. Harper*, 6. F. 4th 531, 538 (3d Cir. 2021) and a case from the Eleventh Circuit, *Parr v. Woodmen of World Life Ins. Co.*, 791 F. 2d 888, 892 (11 Cir. 1986), both involving Title VII. (*Id.* 57 ¶ 220.)

Even if associational discrimination were cognizable under Title VI—or even if Plaintiffs had plausibly alleged that they themselves were perceived as members of a protected class—their claim still fails because they plead no facts establishing their association with Judaism, Israeli nationalism, or any other protected classification. The allegations against Plaintiffs were that they had in fact discriminated and defamed a minority group. Much like in *Wax*, No. 25-269, 2025 WL

2483973, which addressed similar issues, Plaintiffs cannot assert "associational discrimination claim when [they] ask us to read her comments disparaging [other] students as a statement on behalf of a protected class . . . [the alleged acts] were not advocacy for protected classes. They were negative and directed at protected classes." *Wax*, at *5-6 (E.D. Pa. Aug. 28, 2025). Courts reject discrimination claims where the pleadings themselves show that discipline resulted from non-protected misconduct rather than discriminatory animus. *See Cornelius-Millan v. Caribbean Univ., Inc.*, 261 F. Supp. 3d 143, 153 (D.P.R. 2016); *see also Bhombal,* 809 F. App'x at 237.

Plaintiffs do not allege, even in a conclusory manner, that Defendants suspended them because of their relationship with a Jewish classmate. Instead, the Complaint affirmatively admits that Meru Parmer and John Hiester were disciplined for escorting an unauthorized non-student, M. Danowitz, into and around the building. (ECF No. 17 at 28 ¶ 114.) Here, even accepting Plaintiffs' disagreements with how the investigation unfolded, Plaintiffs admit Defendants suspended them for escorting an unauthorized non-student onto school grounds. Plaintiffs further acknowledge that the discipline was rescinded following review—undercutting any inference of racial or national-origin bias.

### 3. Plaintiffs' Disagreement with School Discipline Cannot Salvage Their Title VI Claim

The gravamen of Plaintiffs' Count III Title VI claim is that the School District intentionally discriminated against them or consciously disregarded student harassment—but their own allegations foreclose either inference. Plaintiffs are required to show either (1) direct evidence of willful discrimination or (2) deliberate indifference by defendants to events adverse to the plaintiff. *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019) (citations omitted). To establish deliberate indifference, Plaintiffs must plausibly allege that an "appropriate person" had actual knowledge of discrimination and responded in a manner that was clearly unreasonable in light of the known circumstances. *Gebser*, 524 U.S. at 290; *Blunt v. Lower Merion Sch. Dist.*, 767

F.3d 247, 273 (3d Cir. 2014) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645–49 (1999)); *see also S.H. v. Lower Merion Sch. Dist.,* 729 F.3d 248, 266 n. 26 (3d Cir. 2013) ("Deliberate indifference requires actual knowledge; allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference"). As the following analysis shows, Plaintiffs do not meet this standard .

### i.    Plaintiffs Fail to Allege Facts Demonstrating Discriminatory Animus by a Decisionmaker

This case stems from the June 11, 2024, encounter in the Quiet Room, which triggered a dispute among students, leading to allegedly false rumors about John Hiester's, Meru Parmer's, and M. Danowitz's conduct in the room, which then spread on social media. Even taking the Amended Complaint as true, Plaintiffs allege no conduct directed at them based on race, color, or national origin that could constitute the "severe, pervasive, and objectively offensive" discriminatory harassment required under *Davis*, 526 U.S. at 650-52. Their allegations describe student tensions over political viewpoints and social media posts falsely accusing them of improper conduct in the Quiet Room, not protected-class harassment.

Nor do Plaintiffs plausibly allege discriminatory animus by any decisionmaker. Title VI does not protect individuals from unfair disciplinary decisions made without discriminatory intent, and a mistaken or imperfect investigation does not establish discriminatory intent or pretext. *Bhombal,* 809 F. App'x at 237; *Cornelius-Millan*, 261 F. Supp. 3d at 153 (noting that "even if the University had an incorrect perception that Cornelius, rather than Estades, was primarily responsible for the fight, this incorrect perception is insufficient to demonstrate pretext"). Plaintiffs' allegations make clear that they were disciplined for a legitimate, nondiscriminatory purpose for escorting an unauthorized non-student, not because of their race or national origin. And their own allegations show that school officials promptly investigated the incident, interviewed students, communicated with parents, and ultimately rescinded the discipline. (ECF

No. 17 at 22 ¶ 89, 23 ¶ 92, 29 ¶ 117 n.8.) Courts consistently find such responses incompatible with deliberate indifference. *See, e.g., Gabrielle M. v. Park Forest–Chicago Heights Sch. Dist. 163*, 315 F.3d 817, 825 (7th Cir. 2003) (deliberate indifference "does not require funding recipients to remedy peer harassment" or a "standard that would force funding recipients to suspend or expel every student accused of misconduct"; rather only that the "school not act *clearly unreasonably* in response to known instances of harassment").

Plaintiffs also reference online and off-campus speech by other students regarding Zionism or the June 11, 2024, incident, but such conduct is not within the school's control and cannot support Title VI liability. Courts "routinely dismiss" hostile-environment claims predicated on off-campus or internet commentary. *See M.S. v. Susquehanna Twp. Sch. Dist.*, No. 1:13-cv-02718, 2017 WL 6397827, at *10 (M.D. Pa. Dec. 15, 2017) (dismissing Title IX claims against school district because social media harassment did not occur under circumstances where the school district exercised substantial control over either the harasser or the context in which the harassment occurred) *aff'd*, 969 F.3d 120 (3d Cir. 2020). Here, Plaintiffs allege off campus conduct that occurred starting on June 12th, as the summer break began and the school was closed. (ECF No. 17 at 26 ¶ 105.) Moreover, Plaintiffs allege no facts showing that any such commentary constituted protected-class harassment.

### ii.    Plaintiffs Fail to Plead Necessary Comparator Evidence

The claim fails for the additional reason that Plaintiffs plead no comparator evidence. To assert discriminatory discipline, a plaintiff must allege that reasonably comparable students outside their protected class engaged in nearly identical misconduct but received more favorable treatment. *Ke v. Drexel Univ.*, Civ. No. 11-6708, 2015 WL 5316492, at *19 (E.D. Pa. Sept. 4, 2015) ("mere favorable treatment of one member outside of the protected class as compared to a member of the protected class may not be sufficient to infer discrimination") (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998)). Plaintiffs identify no student of another race or national origin

29

who escorted a non-student or adult into the school. Vague references to disciplinary outcomes involving other students are legally insufficient. *Gazarov ex rel Gazarov v. Diocese of Erie*, 80 F. App'x 202, 206 (3d Cir. 2003) (plaintiff failed to establish a Title VI claim for national origin discrimination based on three-day suspension and that American born were given preferential disciplinary treatment because they were not similarly situated); *see Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 31 (1st Cir. 2007).

Plaintiffs cannot convert their disagreement with school discipline into a Title VI violation. The Supreme Court has cautioned that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. Plaintiffs' own allegations, and the exhibits they attach to their Complaint, show administrators responding promptly and in good faith to a volatile student incident. Nothing in the Complaint—taken as true—supports a plausible inference of discriminatory animus, deliberate indifference, or pretext. Their Title VI claim therefore fails as a matter of law.

###    D.    Count IV Claim for Failure to Provide Procedural Due Process Fails as Plaintiffs Themselves Describe Notice Provided

"Due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 576, 95 S. Ct. 729, 737, 42 L. Ed. 2d 725 (1975). In Pennsylvania, because of the limited impact of suspensions under 10 days, the Pennsylvania Code does not require any recourse, including a hearing, for a school district's decision to suspend a student for fewer than ten days. *Schmader ex rel. Schmader v. Warren Cnty. Sch. Dist.*, 808 A.2d 596, 600 (Pa. Commw. Ct. 2002); appeal denied 820 A.2d 163 (Pa. 2003). Moreover, our courts have recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986).

#125450736v1

Plaintiffs allege that on June 11, 2024, Hiester was informed by Thompson of the allegations that there had been an incident in the Quiet Room, and he was requested to fill out an incident report; and that M. Parmar's parents were contacted on June 12, 2024 to request a statement from him. (ECF No. 17 at 22, 24 ¶¶ 89, 98.) The complaint further alleges that on the same day, Principal Thompson called Jean Danowitz, M. Danowitz's mother to share the allegations against her son. (*Id.* at 23 ¶ 92.) After either providing a statement, or being requested to provide a statement, both Parmar and Hiester were notified of their suspension, which started on June 13, 2024, as well as the reason for it. (*Id.* at 59 ¶ 228.) Ultimately, after further review, and before the start of the next school year, both suspensions were revised based on Plaintiffs' advocacy. (*Id.* at 60 ¶ 237.) As noted in *Meyer v. Austin Independent Sch. Dist.*, the opportunity to challenge the charges through a hearing or otherwise need not only occur before the suspension. 161 F.3d 271, 275 (5th Cir. 1998) (reaffirming that pre-suspension hearings are not always required to conform with Due Process requirements).

Plaintiffs' claims for procedural due process violations must fail. They were provided with an opportunity to fight those charges, and ultimately their suspensions were changed. While Plaintiffs also question the adequacy of the harassment investigation, there is no allegation that the investigation led to discipline, and therefore no evidence of a procedural violation.

### E.    <u>Plaintiffs' Allegations of Policy Harms in Count I Fail to State a Monell Claim</u>

Section 1983 provides a mechanism to pursue federal claims against persons who, acting under color of state law, subject any person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (cleaned up). When a plaintiff brings a Section 1983 claim against a municipality for a violation of the plaintiff's constitution rights, "[l]ocal governments, such as school districts, cannot be held liable

under 1983 for the acts of their employees. . . [L]ocal governments [however] may be found liable for their own illegal acts." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174–75 (3d Cir. 2017) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). Claims seeking municipal liability are governed by the standards established in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Municipal liability under Section 1983 may not be proven under a respondeat superior theory of liability but must instead be found on allegations that the government itself supported a violation of constitutional rights. *Id.* at 690. Such municipal liability exists only where execution of the municipality's "policy or custom, where made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflicts the injury." *Id.* at 694, *Mann*, 872 F.3d at 174–75.

Under Third Circuit precedent, when a plaintiff brings a complaint against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). A custom is established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir. 2007) (cleaned up). Finally, entities may only be held liable under Section 1983 when the alleged official policy or custom caused the plaintiff's harm. *Monell*, 436 U.S. at 694. *Monell*, imposes "rigorous standards of culpability and causation" for municipal liability to ensure that the municipality is not held liable

32

solely for its employees' actions." *Bd. of Cnty. Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 405 (1997). To this end, a plaintiff must also plausibly allege "the existence of proximate causation, that is, an 'affirmative link' between the identified policy or custom and the alleged constitution violation. *Rivas Vazquez v. Lehigh Cnty.*, CV 21-4179, 2022 WL 35608, at *2 (E.D. Pa. Jan. 3, 2022).

Only in Count I do Plaintiffs attempt to identify a policy or custom, but even that attempt fails. Specifically, Plaintiffs allege that it was the individual school's "official policy to restrict access to" the Quiet Room "to those of Muslim faith." (ECF No. 17 at 17 ¶ 62.) Plaintiffs argue that "Defendants maintained a policy within Palumbo of promoting a particular religion—Islam— and denigrating the Jewish religion," including by establishing on school property a "Muslim-only zone" where "non-Muslims are forbidden." (*Id.* at 49 ¶ 187.) But Plaintiffs also acknowledge that the School District issued no policy or announcement designating the Quiet Room as a "Muslim-only" room. (*Id.* at 17 ¶ 62; ECF No. 17-1, Ex. 10.) In fact, as discussed *supra* Section B, the Amended Complaint and attached exhibits further confirm this, demonstrating the space was open to all students on a voluntary basis. (*Id.*) Finally, as discussed *supra* Section A, Plaintiffs fail to plead a sufficient causal link between this alleged policy and the constitutional harms.

### F.    Defendants Gordon, Stamps and Thompson are Entitled to Qualified Immunity in Counts I, II, and IV

Even if Plaintiffs could state plausible claims—which they cannot—Defendants Gordon, Thompson, and Stamps are entitled to qualified immunity as to Plaintiffs' First Amendment and Due Process claims. The doctrine of qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The protection "applies regardless of whether the government official's error is a mistake of law, a mistake of

fact, or a mistake based on mixed questions of law and fact." *Id.* As the Supreme Court emphasized, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine whether qualified immunity applies, courts ask two questions: (1) whether the facts alleged show the violation of a constitutional or statutory right, and (2) whether that right was "clearly established" at the time of the challenged conduct. *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016). Here, neither prong is satisfied.

### i.    Defendants Are Entitled to Qualified Immunity in Count I

As discussed *supra*, Plaintiffs have not alleged any constitutional violation under the Establishment or Free Exercise Clauses of the First Amendment. But even if a violation could somehow be inferred, the law governing such a claim was not clearly established in June 2024, at the time of the incident in the Quiet Room. The Supreme Court's decision in *Kennedy,* 597 U.S. at 534, expressly overruled the *Lemon* test, discarding the analytical framework that had guided Establishment Clause jurisprudence for over fifty years. In its place, *Kennedy* directed courts to assess claims by reference to "historical practices and understandings." *Id.* at 535. That shift fundamentally altered the relevant inquiry and left unsettled the contours of permissible accommodation of religion in public schools. If anything, *Kennedy* made the law less clear—especially in the school context—because it signaled that the Constitution may permit, and indeed sometimes require, a more accommodating stance toward private religious expression in public institutions such as schools.

Given that landscape, no reasonable school administrator or teacher could have known that allowing a neutral, student-accessible Quiet Room—open to all students for reflection, meditation, or prayer—would violate the Establishment Clause. On the contrary, existing precedent would have led them to believe that such accommodation was lawful in light of *Van Zandt v. Thompson*, 839 F.2d at 1218-21, which upheld constitutionality of a prayer room in a state capital building. If

a government-created prayer room in a state capitol was permissible under *Lemon* and the "endorsement" framework, then a student-accessible, voluntary, multipurpose Quiet Room at a public high school would also be lawful under the more deferential "history and tradition" standard recognized in *Kennedy*.

Nor did Defendants have any reason to believe that the presence of student-generated religious items in a neutral, voluntary space imposed any constitutional duty to remove them. Plaintiffs' Amended Complaint and own exhibits confirm that the Quiet Room bore no signage restricting entry, was labeled simply "Quiet Room," and was used by students of all faiths for meditation or prayer. The temporary presence of prayer rugs or similar items reflected the religion of the students who used the room most often—not any official endorsement by the school. To the extent the administrators were even aware of such items, *Kennedy* teaches that neutrality does not require hostility or "purg[ing] from the public sphere anything that an objective observer could reasonably infer endorses or partakes of the religious." *Kennedy*, 597 U.S. at 535; *see also Chandler*, 230 F.3d at 1316 ("The Free Exercise Clause does not permit the State to confine religious speech to whispers or banish it to broom closets"). Moreover, the Amended Complaint contains no allegation that any Plaintiff ever complained about the Quiet Room's existence or contents prior to the June 2024 incident, or removed non-Muslim symbols/items in the Quiet Room. Absent any notice, Defendants Gordon, Stamps, and Thompson could not have known to investigate it. Nor do Plaintiffs allege that the school prohibited or removed any non-Muslim items from the Quiet Room.

Likewise, no clearly established law holds that investigating or disciplining students for escorting an unauthorized non-student—or enforcing neutral conduct rules—violates the Free Exercise Clause. Only government actions that are not neutral or not generally applicable and that impose a *substantial burden* on religious exercise trigger heightened scrutiny. *Church of the*

35

*Lukumi*, 508 U.S. at 531–32. Here, administrators responded to conflicting student reports, initiated an investigation, communicated with parents, and ultimately rescinded the suspensions, none of which applied to M. Danowitz. Nothing in the record or in existing law suggested that temporary discipline for escorting an unauthorized non-student—or investigating that incident—constituted a burden on anyone's religious practice. Accordingly, even if the Court were to find some conceivable connection to religious activity, the individual Defendants could not have known that their conduct violated a clearly established Free Exercise right.

>         ii.    **Defendants Are Entitled to Qualified Immunity in Counts II and IV**

Similarly, Defendants are entitled to qualified immunity on Plaintiffs' Due Process claims because it would not have been clear to a reasonable person in that context that the Defendants' conduct was unlawful. In determining whether a right was clearly established at the time of the alleged violation, courts consider the state of the existing law at the time and "the circumstances confronting" the defendant "to determine whether a reasonable state actor could have believed his conduct was lawful." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Qualified immunity is not lost even when a defendant violates a constitutional right unless a reasonable person would know the *specific* conduct was impermissible. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This analysis is done considering the specific context of the particular case and with regard to each asserted right. *Kelly*, 622 F.3d at 253.

For purposes of a qualified immunity analysis, the question is not whether the precise due process requirements owed to the students were satisfied, but rather whether a reasonable person in the Individual Defendants' positions would believe they afforded the students adequate due process. *Carroll v. Richardson*, CV No. 16-1406, 2021 WL 3209715, at *8 (E.D. Pa. July 29, 2021). Generally, students facing a suspension of ten days or less must be given oral or written notice and, if the charges are denied by the student, an explanation of the evidence against him and

an opportunity to explain his side of the story. *Goss v. Lopez*, 419 U.S. 565, 581 (1975). This requirement for notice and an informal hearing is sufficient to "provide a meaningful hedge against erroneous action," but does not require giving the student the opportunity to secure counsel, confront or cross-examine witnesses, or present witnesses of his own. *Goss*, 419 U.S. at 583. Indeed, the Supreme Court has recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986). Due process is a flexible concept that weighs at times competing interests. *Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989).

Here, even assuming the notice and hearing provided fell short of Due Process requirements, the Defendants acted reasonably given the specific circumstances they faced. The Defendants were responding to evolving information in a volatile environment, all under the time-pressure imposed by the fact the events occurred in the final days of the school year. Plaintiffs acknowledge that parents of John Hiester and Meru Parmar were notified of the suspension the night before the suspension went into effect and told the basis for the suspension. (ECF No. 17 at 59 ¶ 228–29.) This notice came after both Defendants Stamps and Thompson had sought information from both Plaintiffs John Hiester and Meru Parmar about the earlier incident in the Quiet Room, resulting in Meru Parmar filling out an incident report that repeatedly stated "I don't know anything." (*Id.* at 25 ¶ 101.) The students and their families were invited to submit statements and materials, including the cellphone video they claimed exonerated them, giving them a meaningful opportunity to provide a defense. (*Id.* at 32 ¶ 126-27.) That part of this process took place after the suspension is not dispositive that the Plaintiffs' Due Process rights were violated. *See White v. Salisbury Tp. Sch. Dist.*, 588 F. Supp. 608, 613 (E.D. Pa. 1984) (holding that a hearing held the day after a student had been suspended and removed from school did not violate the student's Due Process rights under *Goss* in light of the specific circumstances); *see also Meyer v.*

*Austin Independent Sch. Dist.*, 161 F.3d 271, 275 (5th Cir. 1998) (reaffirming that pre-suspension hearings are not always required to conform with Due Process requirements). The suspension also only went into effect in the final days of the school year, after all classes and examinations had already concluded. (ECF No. 17 at 15 ¶ 53, ECF No. 17-1 Ex. 5.) The ensuing investigation ultimately resulted in the withdrawal of disciplinary action. (ECF No. 17 at 29 ¶ 117 n.8.)  Even if it is assumed the Plaintiffs were not afforded an adequate opportunity to be heard under Due Process standards, the Defendants were responding to a situation where not everyone had been fully cooperative, where the students were provided opportunity to provide their side of the story, and where the suspension went into effect after classes had already ended. The Defendants acted reasonably given those specific circumstances.

The Third Circuit has repeatedly recognized that school officials are entitled to qualified immunity when governing constitutional law is uncertain or evolving. *L.R.*, 836 F.3d at 241; *Miller v. Clinton Cnty.*, 544 F.3d 542, 547 (3d Cir. 2008). In the months following *Kennedy*, the Establishment Clause's contours remained unclear, especially in the context of schools balancing neutrality with accommodation. Given that uncertainty, and given that Plaintiffs' allegations describe only neutral administrative action during a period of extraordinary tension, Defendants Gordon, Thompson, and Stamps could not have known that their conduct violated any clearly established constitutional right. They are therefore entitled to qualified immunity in Counts I, II, and IV.

G.    **Count III Fails Against Defendants Gordon and Thompson Because Title VI Provides No Individual Liability, Official Capacity Claims Are Redundant, and No Clearly Established Law Shows a Violation**

Plaintiffs' Title VI claims against Defendants Gordon and Thompson in both their individual and official capacities must also be dismissed. Under Title VI, the proper defendant is an entity rather than an individual, and "[i]ndividual liability may not be asserted under Title VI." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011). Plaintiffs' official-

38

capacity Title VI claims are also redundant of the claim against the School District because officials "in their official capacities, are part of the district itself" and Plaintiffs seek only damages, not prospective injunctive relief. *Donovan v. Pittston Area Sch. Dist.*, Civ. No. 3:14-1657, 2015 WL 3771420, at \*5 (M.D. Pa. June 17, 2015). Even if they had sought such relief, it would be barred as the discipline is purely retrospective, has already been removed from their records, and "will not recur." *Doe v. Bowling Green State Univ.*, No. 3:22-CV-140, 2022 WL 4599247, at \*6 (N.D. Ohio Sept. 30, 2022).

Moreover, Defendants Gordon and Thompson are independently entitled to qualified immunity which protects school administrators making good-faith, discretionary decisions. *Pearson*, 555 U.S. at 231. No clearly established law suggests that school administrators may be held deliberately indifferent under Title VI where, as here, they promptly investigated the incident, communicated to the parents, imposed and then rescinded discipline, and acted reasonably amid a volatile and rapidly evolving student conflict. Accordingly, Plaintiffs' individual and official-capacity claims under Title VI should be dismissed with prejudice.

### H.    Plaintiffs Cannot Seek Punitive Damages Against the School District and Have Not Pled Facts Necessary For Punitive Damages From Individual Defendants

Plaintiffs seek the remedy of punitive damages in all four Counts against the School District and some or all of the Individual Defendants in their individual or official capacities. But Plaintiffs are barred as a matter of law from seeking punitive damages as to the School District in all counts, and as to all Defendants in their Title VI claim (Count III). *See Judge v. Shikellamy Sch. Dist.*, 135 F.Supp.3d 284, 299 (M.D. Pa. 2015), *aff'd*, 905 F.3d 122 (3d Cir. 2018) ("neither municipalities nor defendants sued in their official capacities can be liable for punitive damages") (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that punitive damages cannot be awarded against municipalities)); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding that plaintiffs in a private action may not recover punitive damages in Title VI suits).

Plaintiffs' fail to allege the necessary mens rea required to recover punitive damages from the Individual Defendants as to Counts I, II, and IV. To recover punitive damages, a plaintiff must demonstrate the official's "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). As to Count I, Plaintiffs plead only conclusory allegations that do not satisfy this heightened standard. Rather, Plaintiffs assert they believed the Quiet Room was "a space open to all students" and observed "no indication that there was any gender or religious restriction on use or occupancy of the room when observing the room from the outside." (ECF No. 17 at 17 ¶¶ 63–64.) And as discussed *supra*, the Establishment Clause does not obligate school officials to suppress any religious connotation, especially in decorations or signage created by students using a space. Thus, Plaintiffs have not and cannot demonstrate that the Individual Defendants violated the Plaintiffs constitutional rights, let alone by acting recklessly, callously, or with the requisite evil motive or intent.

Similarly, as to Counts II and IV, Plaintiffs fail to plead facts to establish the Individual Defendants acted with the necessary evil motive or reckless or callous indifference toward the Defendants' Due Process rights. As discussed *supra*, the Defendants acted promptly to investigate serious allegations that included student safety and the presence of an unauthorized person in a school building. The impact of the temporary suspension was minimized by the fact it occurred at the end of the school year and after classes and exams had concluded. Rather than alleging facts that support finding the Defendants acted with "evil motive," even if taken as true, Plaintiffs demonstrate only individuals attempting to respond quickly to concerns about student safety in a period of extraordinary tension.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss in its entirety and dismiss Counts I, II, III, and IV of Plaintiffs' Amended Complaint with prejudice.


Date:    February 10, 2026                    */s/ Marjorie McMahon Obod*
                                             Marjorie McMahon Obod
                                             **DILWORTH PAXSON LLP**
                                             1650 Market Street, Suite 1200
                                             Philadelphia, Pennsylvania 19103

                                             *Attorney for Defendants*

#125450736v1

## CERTIFICATE OF SERVICE

I, Marjorie M. Obod, Esquire, certify that on the 10th day of February 2026, I caused the foregoing DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT and supporting papers thereto, to be filed, served, and made available for viewing and downloading by the C/M ECF System to the following:

Lori Lowenthal Marcus
The Deborah Project
P.O.B. 212
Merion Station, PA  19066
*Counsel for Plaintiffs, Kathryn Hiester, Christopher Hiester, Jean Danowitz,
Catherine Parmar, and Ratnadeep Parmar*

Lee C. Durivage
Marshall Dennehey
2000 Market Street, Suite 2300
Philadelphia, PA  19103
*Counsel for Defendants, Keziah Ridgeway and Kristen Luebbert*

Date: February 10, 2026                 */s/ Marjorie M. Obod*
                                        I.D. No. 47531
                                        **DILWORTH PAXSON LLP**
                                        1650 Market Street, Suite 1200
                                        Philadelphia, Pennsylvania 19103

                                        *Attorney for Defendant,
                                        The School District of Philadelphia, Richard
                                        Gordon IV, Kiana Thompson, and Rashida Stamps*

#125450736v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HIESTER, et al, | **:** |
| | **:** |
| Plaintiffs, | **:** |
| | **:** |
| | **:** CIVIL ACTION |
| v. | **:** |
| | **:** NO. 25-04502-JMY |
| THE SCHOOL DISTRICT OF | **:** |
| PHILADELPHIA, et al | **:** |
| | **:** |
| Defendants. | **:** |
| | **:** |

## <u>ORDER</u>

**AND NOW,** this_____ day of _____ , 2026, upon consideration of the Motion to Dismiss Plaintiffs' Amended Complaint by Defendants the School District of Philadelphia, Richard Gordon IV, Kiana Thompson, and Rashida Stamps, and Plaintiffs' response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED** in its entirety, and Counts I, II, III, and IV of Plaintiffs' Amended Complaint are **DISMISSED**.

**BY THE COURT:**

_____
**JOHN MILTON YOUNGE, U.S.D.J.**

43

#125450736v1