# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN HIESTER and CHRISTOPHER HIESTER, JOHN HIESTER, JEAN DANOWITZ, as Guardian for M. DANOWITZ, a Minor; CATHERINE PARMAR and RATNADEEP PARMAR, and MERU PARMAR | : : : : : : | CIVIL ACTION NO. 25-4502 |
| SCHOOL DISTRICT OF PHILADELPHIA; | : : : : | |
| RICHARD GORDON, IV; KIANA THOMPSON RASHIDA STAMPS; KRISTIN LUEBBERT, and KEZIAH RIDGEWAY | : : : | **JURY TRIAL DEMANDED** |

The Reply briefs of both sets of Defendants demonstrate the poverty of their arguments. Faced with Plaintiffs' answers to those arguments as first made in their opening briefs, Defendants' replies make no effort to address what Plaintiffs wrote in their Opposition and instead simply repeat their opening briefs' arguments.[1]

Because this is so, this Sur-Reply does not address every point made in the Reply briefs of the SDP Defendants and the SDP teachers. We limit our focus to the most egregious mischaracterizations of the Amended Complaint, and to their most significant legal errors.

    I.       DEFENDANTS' REPLY BRIEFS CONTINUE THEIR PRACTICE OF REFUSING TO CONFRONT WHAT THE AMENDED COMPLAINT ACTUALLY SAYS

---

[1] The Teacher Defendants complain that the AC repeatedly uses the word repeatedly "Defendants" as if the AC left it unclear which Defendant is being charged with which acts. ECF No. 55 at 3. In fact the AC is perfectly clear in identifying who did what. Count II, the only count that names Luebbert and Ridgeway as Defendants, specifies very clearly each of the acts those two Defendants are charged with committing. The clarity is manifest from these Defendants' briefs, which identify those acts, and then proclaim either that they did not commit them or that their commission is innocent. Nowhere in any Defendants' brief is there any statement manifesting uncertainty about which Defendant is alleged to have committed any specific action which forms the basis for that Defendant's legal liability.

First, Defendants' opening briefs did not quote, but instead *misquoted* the Complaint in numerous crucial instances. Plaintiffs' Opposition Brief ECF No. 50, showed these misquotations for what they are. In their Replies, Defendants completely ignore the Opposition Brief and simply repeat the arguments and misstatements in their opening memoranda. For example:

- The Amended Complaint does not, *ever*, allege that the Prayer Room was a neutral space open equally to all. SDP Defendants' seize on one line appearing not in the Complaint but on one page of a lengthy exhibit transcribing a single phrase allegedly uttered by a high school student (ECF No.56 at 2). The alleged statement invoked was not made by anyone empowered to speak on behalf of the District, and appears on one of hundreds of pages of exhibits. Inclusion of this tiny snippet does not contradict Plaintiffs' explicit Complaint allegations, or indeed, the testimony of all the others whose interviews are included in that Exhibit. The District's Reply brief argument continues to ignore the force of explicit statements made by the school's leaders who are (a) adults and (b) employed by the School District and vested with authority over the Palumbo High School, and who are Defendants in this case.

- Similarly, the District claims that "Plaintiffs themselves allege no restriction, confirmed by exhibits stating the room was "available to all students." This,

again, blinks reality, and the Amended Complaint's numerous allegations about exactly this fact, that the room was "***not***" available to all students. [2]

- SDP Defendants claim to quote Plaintiffs' Amended Complaint, "Plaintiffs allege the student body was unaware of any restriction limiting the room to Muslim students." ECF No. 56, at 2. But what AC ECF No. 17 ¶ 62 actually says, in addition to what is repeated above, is that "The Muslim students were very much aware of the Prayer Room's existence and rules, AC ECF 17 at ¶62 p. 17 n. 4 lays out the evidence for this claim, but there is no evidence that the entire school body was ever officially put on notice of the true purpose of the Prayer Room or about the rules associated with it." That is practically the exact opposite of SDP's misquote.

## II.   THE AMENDED COMPLAINT ADEQUATELY ALLEGES STATE ACTION BY THE TEACHER DEFENDANTS

Public school teachers are state actors for Constitutional law purposes. *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 655 (1995).  While they are also of course private citizens, the question posed by this case is whether the Teacher Defendants invoked their authority as public school teachers when they engaged in the acts at issue:  if they did, their actions constitute state action.

---

[2] See AC ECF No. 17 ¶62 "exclusively Islamic imagery and prayer items within the room," "Thompson's own statement to the Police (and Exh 2), "the Palestinian flag on the entire lower half of the door to the room," ibid. Exh. 4, p. 8,  ibid. ¶ 62, fn 4  and Exh. 3, Exh. 5 at p. 21, and Exh.6, ¶¶ 67, 68, 69, 72, 73, and ¶ 74 n.5.

Here, Defendants Luebbert and Ridgeway both addressed the public, falsely accusing the Student Plaintiffs of horrific, bigoted and violent action. The AC alleges that both did so in their capacity as public school teachers (AC ECF No. 17 ¶201) and it substantiates this with the allegation that both Luebbert and Ridgeway "used their status as SDP teachers to bolster the perceived veracity of the accusations each of them raised against the Boys." AC ECF No. 17 ¶207. They disseminated the false accusations through Instagram accounts formally identifying them as the public school teachers they are. Moreover, Luebbert, who spoke before Ridgeway and whom Ridgeway republished, stood up at a livestreamed Philadelphia School District Board of Education public meeting, announced that she was speaking as a participant in the School District's work and then trumpeted her false and salacious charges, portraying her speech as the revelation of previously unknown facts which she was disclosing to the public for the first time. This is what she said:

> Good Afternoon, I'm Kristin Luebbert–I want to highlight Guardrail 4 today.
>
> *It says: "Our students' potential will not be limited by practices that perpetuate systemic racism and hinder student achievement."*
>
> *We* are not meeting Guardrail 4 when it comes to Anti-Muslim and anti-Black hate in this district. Please prepare yourselves, the incident I am about to relate to you shocks the conscience and human decency in all of us:
>
> https://docs.google.com/document/d/12ZJFZGt2AFG2XpuEXfjPMcIdMbK86zjvtisdQ0eLh9g/edit, cited and quoted in the AC ECF No. 17 at ¶135 and n. 10 (emphasis added).

That Luebbert began her testimony with the word "we" is telling – Luebbert is saying that she speaking as a part of the School District, and asserting that the body of which she is a member has failed in its duty because the outrageous acts of which she accuses the Student

Plaintiffs had been, allegedly, allowed to occur. She is doing the same with her claim to be revealing previously non-public information.

This Court set forth the governing standard on the presence of state action in *Dmitri v. City of Philadelphia,* 2019 U.S. Dist. LEXIS 178577 *; 2019 WL 5212357 (E.D. PA Oct. 15, 2019), in which this Court explained that whether off-duty police officers were acting under color of state law depended on whether the Defendant used "the cloak of the state's authority' as a means to commit" the acts at issue.

*Dmitri* explains that a police officer engages in state action if, for example, he "flashes his badge" while engaged in the acts at issue. That is exactly what Defendant Luebbert did when she stood up in public and announced, as a public school teacher, that "we" are not complying with School District policies and that she was revealing previously non-public information about the Student Plaintiffs. Similarly, both Luebbert and Ridgeway used Instagram accounts that expressly identify in the account names that they are teachers. Their communications through this social media platform are ones made as and because they are teachers.

In response to these allegations, Defendants Luebbert and Ridgeway offer nothing but their own *ipse dixit* that their actions did not meet this standard: their brief, ECF No. 55 at 2 simply asserts that the actions they took were taken entirely in their private capacity. But this is not an argument, and it makes no effort to come to terms with what was been alleged in this lawsuit.

This is a Motion to Dismiss, and the full extent of Luebbert's use of her status as a Philadelphia public school teacher will not be known until discovery is fully underway. Who were her Instagram followers? How many were her former students – and in addition to those, how many other followers were people who only became acquainted with her or followed her

because she was a public school teacher in order to find out what was happening in the school district?  Where did Luebbert obtain the false information she bleated out to the public?  Luebbert phrased her carefully prepared announcement at the School Board meeting as if she was sharing with the crowd a revelation, suggesting that her "information" may very well have come from one of the other individual Defendants.  That too further bolsters the Plaintiffs' claim that Luebbert was acting under color of state law by disseminating these false charges, as was Ridgeway by amplifying them.

III.     PLAINTIFFS HAVE SATISFIED THE STANDARD OF "STIGMA PLUS"

Pretending that dozens of paragraphs of the Amended Complaint do not exist,[3] the District and the Teacher Defendants assert that Plaintiffs have "failed to raise any factual allegations that would meet the "stigma" prong of the stigma-plus test.  Rather, both sets of Defendants allege that Plaintiffs merely make bald, unsupported conclusory statements that Plaintiffs experienced "reputational harm within the school community, in their homes, and beyond." Luebbert and Ridgeway Reply Brief, ECF No. 55 p. 4. See also SDP Reply Brief, ECF No. 56 at 8-9.

But Luebbert publicly announced and Ridgeway further amplified serious accusations that Plaintiffs have alleged are false:  that Student Plaintiffs were "intruders" in a space where they had no right to be, and that they entered "yelling that they were 'proud Zionists'-[and] proceeded to invade the space, rip things off the wall, throw prayer rugs around–and–in an appalling display of sacrilegious defilement, proceeded to grind and writhe on the floor in an imitation of sex acts."  AC ECF No. 17 at ¶135 and n. 10

---

[3] The harassment, and threats of violence, are described in the AC ¶¶80-119 and 133-142.

Luebbert cannot in good faith contend that these accusations would not cast a "stigma" on the Student Plaintiffs. Indeed, Luebbert herself announced that the acts of which she was accusing the Student Plaintiffs "shock[] the conscience and human decency in all of us." *Ibid.* The Amended Complaint details the avalanche of denunciations, and threats of violence, that followed publication of these false allegations. See supra, n. 3.

There can be no serious question that the Student Plaintiffs were stigmatized by these accusations, as what followed those accusations were the numerous threats including ones of physical violence and even death themselves make clear. The Amended Complaint alleges that the allegations are false, and the District's far-too-late withdrawal of the harassment finding makes it impossible for Defendants to dispute that allegation on this Motion to Dismiss, so the infliction of this stigma was, necessarily, unjustified.

Against the "plus" element, the Teacher Defendants' repeat a contention ECF 55 at p. 5, which Plaintiffs definitively rebutted in their Opposition papers: that there is no loss here of any right because the Student Plaintiffs have no right to attend the school of their choice. But Plaintiffs answered this obtuse argument in their Opposition ECF No. 50 at p. 39 ("Plaintiffs allege that the harm to John Hiester and Meru Parmar included their inability to continue their high school education in the District in which they (then) lived, (see AC ECF No. 17 at ¶¶ 178-179)").

The Teachers' and the DISTRICT's Reply Briefs show that Defendants have no response to what Plaintiffs said: the loss at issue here is not the loss of the ability to attend a single school of Plaintiffs' choosing, but the legal right to attend public school in the school district where Plaintiffs reside – a right conferred by Pennsylvnia law on all citizens, and which the Defendants' actions here effectively took away by making the only school available to Plaintiffs

unsafe and so unavailable.  The Amended Complaint alleges clearly that *this* right was denied because the destruction of the reputation of Student Plaintiffs Parmar and Heister made it impossible for either of them to attend Palumbo, *and* because both families requested the right to attend other schools in the District and the District never bothered to even answer these requests. The Parmar and Heister families were therefore left to choose between sending their sons to a school where both boys had been told they'd be killed or beaten if they showed their faces there again, or moving to a non-Philadelphia public high school.  AC, ECF No. 17  ¶¶ 178-179.

IV.     PLAINTIFFS' DUE PROCESS CLAIM IS LEGALLY SUFFICIENT

The due process claims in this case arise out of two different accusations, and two sets of procedural failures –one for each of the two sets of charges.  The first baseless accusation was for the non-existent, and relatively quickly abandoned, charge of surreptitiously enabling a non-student to enter the Palumbo building.  The second was for the District's since-abandoned "finding" that the Student Plaintiffs harassed Muslim girls in the Prayer Room and trashed and desecrated the room.

Defendants' attack on these claims is based on their attempt to confuse the court by trying to combine the two different sets of punishments and two separate but each wholly inadequate investigations.

The first Constitutionally deficient process here at issue is the one that ended in the imposition of a two-day, out of school suspension, ostensibly imposed as punishment for the alleged violation of an SDP Code of Conduct provision that, as even the DISTRICT had to admit, did not exist.  There cannot possibly be a valid process for charging someone, finding them guilty, and punishing them, for violating a rule that did not exist.  And as subsequent events

proved, the District had in its possession its own evidence showing that nothing of the kind that was allegedly the underlying basis for the charge ever occurred. There was no rule prohibiting Palumbo students from sneaking in a non-student into Palumbo and, in fact, the Student Plaintiffs did not sneak in to Palumbo a non-Palumbo student. The acts said to constitute this "violation "allegedly occurred on the morning of June 11, 2024. The district recanted this charge more than a month later. This was explained clearly in the Amended Complaint ECF No. 17 ¶ 8, and in Plaintiffs' Opposition papers. ECF No. 50 at p. 17. The School District Defendants' reply had and has no answer for this.

As part of the first of these processes, Plaintiffs J. HIESTER and M. PARMAR (and non-party J. PARGAMANIK) were summarily suspended by Defendant THOMPSON at the direction of Defendant GORDON on June 12. The basis for the suspension was the alleged "sneaking" of a non-student into Palumbo on June 11. AC ECF No. 17 ¶6. That suspension was later rescinded, after Plaintiffs' counsel referred the DISTRICT to its own video evidence conclusively proving the claim false. Id.

The District Defendants claim there was an immediate investigation of the act which led to the suspension, but the AC makes clear that that is wrong. The only "investigation" carried out on June 11 and 12 had nothing to do with anyone's entry into the building: the Boys were instructed to fill out Incident Reports, and the Parents were apprised by Defendant THOMPSON, *not* about such entry to Palumbo, but about what allegedly happened in the Palumbo Prayer Room on the morning of June 11. That was the "incident" the SDP Defendants were pursuing. No part of that "investigation" can possibly provide due process for a punishment imposed for the entirely different (and non-existent) offense of facilitating an unauthorized entry through a back door into the Palumbo school building.

9

The second Constitutionally deficient process was the one that resulted in a finding that Plaintiffs J.HIESTER and M.PARMAR committed harassment against Palumbo students in the school Prayer Room on June 11, 2024. As the Amended Complaint alleges, that "investigation" included reliance on multiple people who were not witnesses to any of the events at issue; and they did *not* include use of a video which the DISTRICT knew existed, and which provided direct evidence on the matters being investigated. AC ECF No. 17 ¶¶ 9b, 180-183, 246. Long after this clearly inadequate investigation, the DISTRICT recanted this charge against J. HIESTER and M. PARMAR, but failed to even advise the Plaintiffs of this recantation. AC ECF No. 17 ¶8.

Contradicting the Amended Complaint's allegations, AC ECF No. 17 ¶¶89, 99-103, the DISTRICT asks this Court to dismiss the Due Process claim on the strength of the District's having summoned J.HIESTER, M.PARMAR and non-party J.PARGAMANIK, and THOMPSON's calls to the parents of Student Plaintiffs SDP Reply Brief, ECF No. 56 at p. 3. But the Opposition papers explained that the Incident Reports and the calls by THOMPSON solely focused on what happened in the Palumbo Prayer Room after the school day had begun on June 11, 2024, ECF No. 50 at pp. 20-21. It cannot be that an "investigation" satisfies due process if the "investigation" did not involve anyone's investigating whether the offense charged actually took place.

Defendants' defense that any harm from the fabricated SDP policy violations that befell J.HIESTER and M.PARMAR was "de minimis" SDP Reply Brief, ECF No. 56 at pp. 10, 11, and so not harmful is yet another instance of Defendants' pretending away whole swathes of the Amended Complaint. That pleading alleges clearly that the School District's punishment of the

Student Plaintiffs stoked and supported the false public accusations that the Boys had engaged in wrongful conduct in the Prayer Room. AC, ECF No. 17 ¶242.

Contrary to Defendants' attempted self-exculpation, there was never any "immediate and thorough investigation" prior to the issuance of the suspension and the AC contains no allegations which could possibly be read to mean that such an investigation had occurred. This too is yet another instance of Defendants asking the Court to dismiss Plaintiffs' claims on the basis of Defendants' version of the facts rather than the one set out in the controlling pleading.

V.      THE DISTRICT'S ATTACK ON PLAINTIFFS' LIBERTY INTEREST CLAIM FAILS BECAUSE IT IGNOREs THE TRUE FACTUAL BASIS FOR THE CLAIM

The District errs again by invoking cases requiring a defamation defendant to publish a false statement, as if the only basis for Plaintiffs' Liberty Interest claim against the DISTRICT was for the DISTRICT's failure to correct someone else's false statement.[4] The DISTRICT did indeed make significant false statements, one of which was that, in suspending the boys, the DISTRICT falsely stated that each of the Student Plaintiffs had engaged in misconduct on June 11, 2024 at the school. AC, ECF NO. 17 ¶202a. We know that was false because the DISTRICT later retracted it, reversing the suspensions and the findings of wrongful action.

The DISTRICT spoke again falsely about the boys when it falsely stated that they had harassed Muslim girls in the Prayer Room. AC ECF No. 17 ¶202b. We know that statement was false because the DISTRICT reversed that finding as well. The suspension, as the AC, ECF No. 17 clearly alleges in ¶168, "validated and further stimulated the rumors circulating about the Boys' conduct." The harassment finding did the same. ECF No. 17 ¶204.

---

[4] See District Reply ECF NO. 56 at 16: "Plaintiffs do not plausibly allege that Defendants made or disseminated any defamatory statement."

Having spoken falsely and validated the accusations that the DISTRICT knew were being hurled at the boys, the District had a duty to correct. It did nothing. AC, ECF No. 17 ¶206.

The DISTRICT's effort to escape this claim by arguing that it did not speak and instead is charged with simply failing to correct someone else's statement, completely ignores the substance of the claim it purports to be addressing.

VI.     THE FIRST AMENDMENT CLAIMS ARE LEGALLY SUFFICIENT

The Supreme Court instructed in *Edwards v. Aguillard*, 482 U.S. 578, 583-84 (1987) that the courts must be particularly "vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." The Court went on to state that:

> Families entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance religious views that may conflict with the private beliefs of the student and his or her family. Students in such institutions are impressionable and their attendance is involuntary.

Ibid.

Because its Reply Brief mistakenly relies exclusively on cases dealing with standing to seek injunctive relief, the DISTRICT attacks M. Danowitz's First Amendment claim – even though that claim and that Student Plaintiff does not seek injunctive relief. Plaintiffs pointed this out in their Opposition brief ECF No. 50 at pp. 24-26. The District has no answer; they simply repeat, without any legal authority, the same flawed argument they made in their opening brief. Indeed, the District's own authority demonstrates that Danowitz does have standing: *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), cited by the District at Reply ECF No. 56 ¶12, holds that the "concrete harm" necessary to confer First Amendment standing can be caused by reputational harm.

The District also continues its baseless attack on the Parmar family's standing to seek injunctive relief, based on its continued refusal to acknowledge that the Amended Complaint does indeed allege that the Parmars have a younger child who is eligible to attend Palumbo and whom the Parmars planned to send to Palumbo if it were safe to do so. The AC alleges this clearly, at ECF No. 17 ¶195. Yet the District continues to claim that Plaintiffs invented the factual predicate for this argument only in Plaintiffs' brief. No matter how many times Defendants assert this, it still won't be true: the allegation is right there in the Amended Complaint and it supports the claim for injunctive relief.

**CONCLUSION**

For all the foregoing reasons and those set forth in Plaintiffs' earlier Opposition Brief, the Court should deny the Defendants' Motions to Dismiss the Amended Complaint.

Jerome M. Marcus, PA Attorney ID 50708

THE DEBORAH PROJECT

P.O. Box 212

Merion Station, PA. 19066

Voice: 610.880.0100

FAX: 610.664.1559

Lori Lowenthal Marcus, PA Attorney ID 5338

THE DEBORAH PROJECT

P.O. Box 212

Merion Station, PA. 19066

Voice: 610.880.0100

FAX: 610.664.1559